[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 54.]

THE STATE EX REL. BEACON JOURNAL PUBLISHING COMPANY ET AL.,
APPELLANTS AND CROSS-APPELLEES, *v.* MAURER, SHERIFF, APPELLEE AND
CROSS-APPELLANT.

[Cite as *State ex rel. Beacon Journal Publishing Co. v. Maurer*,
2001-Ohio-282.]

*Public records—Mandamus sought to compel Wayne County Sheriff to provide*
*relators the right to access, inspect, and copy an unredacted version of an*
*incident report concerning the shooting and killing of an individual by*
*police officers—Denial of writ by court of appeals reversed.*

(No. 00-457—Submitted December 13, 2000—Decided February 14, 2001.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Wayne County, No.
99-CA-0026.

_____

***Per Curiam.***

{¶ 1} On February 28, 1999, Robert G. Huffman, who was despondent over
his imminent arrest by the state of Michigan, the custody circumstances of his ten-
year-old son, and Huffman's inability to help him, telephoned the Wayne County
Justice Center. Huffman told the dispatcher there that Huffman was at the Oak
Grove Cemetery in Shreve, Ohio, waiting for the police to come and kill him.
Wayne County deputy sheriffs and law enforcement officers from several
municipalities converged on the cemetery. The officers talked with Huffman for
about four hours; Huffman would not surrender. Then, several officers approached
Huffman, and Huffman pointed his gun at the officers. One of the officers fired
two shots at Huffman, killing him.

{¶ 2} A deputy sheriff reported Huffman's shooting on an "Ohio Uniform
Incident Report" form, listing Huffman as the victim and the "offense" as "sudden

death." In the space apparently to be used to describe the events, the deputy wrote "taped narrative" and attached to the incident report four typed transcripts of taped statements by law enforcement officers. These typed narrative statements were titled "Wayne County Sheriff's Office Narrative/Supplementary Report." Written statements by other witnesses were also attached to the report. The incident report form totals two pages in length; the typed narrative statements and witnesses' statements total thirty-five pages.

{¶ 3} On March 4 and March 8, 1999, a representative of the Beacon Journal Publishing Company, appellant and cross-appellee, asked Wayne County Sheriff Thomas G. Maurer, appellee and cross-appellant, to release a copy of this incident report. On March 15, 1999, Marilyn Miller Roane, assistant metropolitan editor of the Akron Beacon Journal, appellant and cross-appellee, wrote a letter to Maurer, also requesting a copy of this report. On March 16, 1999, a Beacon Journal Publishing Company representative again asked the sheriff's office for a copy of this report.

{¶ 4} Finally, on March 18, 1999, the sheriff submitted a copy of the incident report, including the typed narrative statements and witnesses' statements, but with the names of law enforcement officers blacked out.[1] Roane requested an unredacted copy, but Wayne County Prosecuting Attorney Martin Frantz advised Roane that the sheriff would release only the redacted copy of the incident report. Frantz explained that Maurer had blacked out the names so as not to disclose the identity of an uncharged suspect, the officer who shot Huffman. He also reasoned that disclosing the names of the other officers would allow the public to discover the identity of the uncharged suspect by comparing that day's duty roster with the incident report. Frantz does not plan to indict anyone because of the shooting.

---

1. Maurer inadvertently disclosed two of the officers' names.

**{¶ 5}** The Beacon Journal Publishing Company and Roane ("Beacon Journal") filed a petition for a writ of mandamus in the Court of Appeals for Wayne County. In the petition, the Beacon Journal sought an order to compel Maurer "to immediately provide relators the right to access, inspect and copy an unredacted version of the incident report." They also asked that Maurer pay them reasonable attorney fees.

**{¶ 6}** The court of appeals treated the incident report and the typed narrative statements together as a confidential law enforcement investigatory record. The court did this apparently because the typed narrative statements provided a thorough description of the events leading to the death of Huffman; the court evidently linked the incident report form with the typed narrative statements. The court of appeals understood the report and typed narrative statements to identify the officer who shot Huffman[2] and decided not to disclose the officer's name under the uncharged-suspect exception. Thus, the court of appeals permitted Maurer to withhold this officer's name but ordered Maurer to disclose the names of the other officers. The court also denied an award of attorney fees because Maurer had pursued reasonable legal theories in the case and had acted in good faith.

**{¶ 7}** This cause is now before the court upon an appeal and cross-appeal as of right.

**{¶ 8}** The Beacon Journal essentially argues that Maurer must immediately release this incident report without any redaction under *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph five of the syllabus, and *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 662 N.E.2d 334. Maurer counters that incident reports on homicides are confidential law enforcement investigatory records. Maurer further maintains that

---

2. According to Maurer's deposition testimony, Maurer did not believe that the two-page incident report identified the officer who shot Huffman.

once the investigation ends, he may release only a copy of the report that withholds the name of the officer who shot the victim, because the officer is an uncharged suspect, and that withholds the names of the other officers, because disclosing their identities would lead to disclosing the officer who shot the victim.

{¶ 9} Under R.C. 149.43(A)(1)(h), a confidential law enforcement investigatory record is not a public record. According to *State ex rel. Polovischak v. Mayfield* (1990), 50 Ohio St.3d 51, 52, 552 N.E.2d 635, 636-637, we employ a two-step test to determine whether a record is exempt as a confidential law enforcement record under R.C. 149.43:

"First, is the record a confidential law enforcement record? Second, would release of the record 'create a high probability of disclosure' of any one of four kinds of information specified in R.C. 149.43(A)(2)?"

{¶ 10} To decide this case, we must review R.C. 149.43(A)(2)(a) and (c), which state:

" 'Confidential law enforcement investigatory record' means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

"(a) The identity of a suspect who has not been charged with the offense to which the record pertains * * *;

" * * *

"(c) Specific confidential investigatory techniques or procedures or specific investigatory work product."

{¶ 11} We have stated that incident reports initiate criminal investigations but are not part of the investigation. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.,* 75 Ohio St.3d at 378, 662 N.E.2d at 337. Today, we hold that this report, including the typed narrative statements, is not a confidential law enforcement investigatory record but is a public record, and that its custodian, Maurer, must

4

release an unredacted copy immediately upon request. Consequently, we reject the court of appeals' treatment of this incident report as a confidential law enforcement investigatory record and order Maurer to release an unredacted copy of it to the Beacon Journal.

{¶ 12} In *Steckman*, we reviewed the work-product exception contained in R.C. 149.43(A)(2)(c). We ruled that information, including notes, working papers, memoranda, or similar materials, assembled by law enforcement officials in connection with a probable or pending criminal proceeding is work product under R.C. 149.43(A)(2)(c). 70 Ohio St.3d at 434, 639 N.E.2d at 94. We concluded that this code provision excepted this information from disclosure as a public record, although disclosure may be required under Crim.R. 16. However, we ruled in paragraph five of the syllabus that the work-product exception "does not include ongoing routine offense and incident reports * * *. Routine offense and incident reports are subject to immediate release upon request. If release is refused, an action in mandamus, pursuant to R.C. 149.43(C), will lie to secure release of the records."

{¶ 13} Three years later, in *State ex rel. Logan Daily News v. Jones* (1997), 78 Ohio St.3d 322, 323, 677 N.E.2d 1195, 1196, we again ruled that "incident reports requested by relator are not exempt from disclosure," citing *Steckman*. Thus, the Beacon Journal was entitled to a writ of mandamus when Maurer refused to release this incident report, unredacted, immediately on the Beacon Journal's request.

{¶ 14} In *Cincinnati Enquirer*, decided in 1996, we had ruled that 911 tapes, which record emergency calls received by 911 operators, were public records, so the public agencies receiving and recording them must release them immediately upon request. We stated, 75 Ohio St.3d at 378, 662 N.E.2d at 337, that "because 911 calls generally precede offense or incident form reports completed by the police, they are even further removed from the initiation of the criminal

investigation than the form reports themselves." Thus, as we stated earlier, incident reports initiate the criminal investigation; they are not part of it.

{¶ 15} We rule this way despite the risk that the report may disclose the identity of an uncharged suspect. A deputy incorporated the typed narrative statements by reference in the incident report. He consequently incorporated them in a public record. He cannot now remove the "public records cloak." In *Cincinnati Enquirer*, we stated:

"[I]t does not matter that release of the tapes might reveal the identity of an uncharged suspect or contain information which, if disclosed, would endanger the life or physical safety of a witness. * * *

" * * * Once clothed with the public records cloak, the records cannot be defrocked of their status." 75 Ohio St.3d at 378, 662 N.E.2d at 337-338.

{¶ 16} Next, the Beacon Journal asks us to award it attorney fees. The court of appeals denied the award of attorney fees because, as the court reasoned, Maurer pursued reasonable legal theories and did not act in bad faith. We must decide whether the court of appeals abused its discretion in not awarding these fees. *State ex rel. Olander v. French* (1997), 79 Ohio St.3d 176, 178-179, 680 N.E.2d 962, 964.

{¶ 17} Awarding "attorney fees in public records cases is discretionary and is to be determined by the presence of a public benefit conferred by relator seeking the disclosure. Moreover, since the award is punitive, reasonableness and good faith of the respondent in refusing to make disclosure may also be considered." *State ex rel. Multimedia, Inc. v. Whalen* (1990), 51 Ohio St.3d 99, 100, 554 N.E.2d 1321, 1322.

{¶ 18} Here, as in *Whalen*, we find a public benefit. The Beacon Journal publishes a newspaper and securing this record enables it to provide "complete and accurate news reports * * * to the public." *Id.* at 100, 554 N.E.2d at 1322. Furthermore, our prior decisions have unequivocally held that incident reports are

public records and must be disclosed immediately upon request. Thus, we have consistently and summarily rejected Maurer's arguments. Consequently, the court of appeals abused its discretion in not awarding attorney fees to the Beacon Journal.

{¶ 19} Accordingly, we reverse the decision of the court of appeals and remand this cause to it. We direct the court of appeals to issue a writ compelling Maurer to release an unredacted copy of the incident report and to determine the amount of attorney fees to award the Beacon Journal.

*Judgment reversed*

*and cause remanded.*

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., concurs in judgment.

COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 20} Because I would affirm the judgment of the court of appeals in every respect, I respectfully dissent.

{¶ 21} R.C. 149.43(A)(1)(h) exempts "confidential law enforcement investigatory records" from disclosure as public records. R.C. 149.43(A)(2) defines "confidential law enforcement investigatory record" as "*any* record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure" of any information described in R.C. 149.43(A)(2)(a) to (d). (Emphasis added.) Thus, a record is a "confidential law enforcement investigatory record," and exempt from disclosure, if it satisfies both parts of the definition. That is, the record must (1) pertain to a criminal, quasi-criminal, civil, or administrative law enforcement matter and (2) create a high probability of disclosing the statutorily described information. See *State ex rel.*

*Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 142, 647 N.E.2d 1374, 1377.

{¶ 22} The majority decides that the incident report at issue here is a public record because it does not satisfy the first part of the definition. Relying on *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 662 N.E.2d 334, the majority states that the incident reports "initiate the criminal investigation [but] are not part of it." Thus, the majority essentially decides that the incident report is *not* a record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature. I cannot agree.

{¶ 23} In *Cincinnati Enquirer*, we decided that 911 tapes were not confidential law enforcement investigatory records because they were not prepared by law enforcement officials or attorneys and were routinely recorded without any specific investigatory purpose. *Id.* at 378, 662 N.E.2d at 337. The same cannot be said of incident reports prepared by police officers.[3] An officer generates an incident report only after some initial investigation, such as visiting an accident or crime scene and speaking to witnesses. To conclude that the incident reports prepared by police "are not part of" an investigation ignores the fact that the substance of the report is a product of an officer's investigatory work. I would therefore conclude that the incident report satisfies the first prong of the definition of "confidential law enforcement investigatory record."[4]

---

3. The majority quotes a passage from *Cincinnati Enquirer* stating that "because 911 calls generally precede offense or incident form reports completed by the police, they are even further removed from the initiation of the criminal investigation than the form reports themselves." *Cincinnati Enquirer*, 75 Ohio St.3d at 378, 662 N.E.2d at 337. From this statement, the majority concludes that routine incident reports cannot be confidential law enforcement investigatory reports. But this passage was mere dicta. Only 911 tapes, and not incident reports, were at issue in that case. Although I joined the *Cincinnati Enquirer* opinion, I do not view it as supporting authority for the proposition that police incident reports may never qualify as confidential law enforcement investigatory records.

4. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, does not support the majority's conclusion that the incident report in this case cannot be an exempt confidential law enforcement investigatory record. In *Steckman*, this court held that routine incident reports "are

{¶ 24} I would also find that the court of appeals was correct in deciding that the disclosure of a completely unredacted incident report would create a high probability of disclosing the identity of an uncharged suspect (the officer who fatally shot Robert Huffman). R.C. 149.43(A)(2)(a) exempts from disclosure those records "that identif[y] persons who were subject to ongoing investigations as to which no public action, such as an arrest or a citation, had yet been taken." *State ex rel. Outlet Communications, Inc. v. Lancaster Police Dept.* (1988), 38 Ohio St.3d 324, 328, 528 N.E.2d 175, 178. The exception is designed to avoid subjecting a person to adverse publicity when, but for disclosure, he may not have been identified with the investigation in any way. *State ex rel. Thompson Newspapers, Inc. v. Martin* (1989), 47 Ohio St.3d 28, 30, 546 N.E.2d 939, 942. The exemption is also designed to avoid releasing information about uncharged suspects that could compromise later efforts to investigate and solve inactive cases. *State ex rel. Moreland v. Dayton* (1993), 67 Ohio St.3d 129, 131, 616 N.E.2d 234, 236.

{¶ 25} Although the Wayne County Prosecutor has decided not to charge anyone in the Huffman shooting, this decision does not affect the applicability of the exemption. *Thompson Newspapers*, 47 Ohio St.3d 28, 546 N.E.2d 939, at paragraph two of the syllabus; see, also, *State ex rel. Polovischak v. Mayfield* (1990), 50 Ohio St.3d 51, 552 N.E.2d 635, syllabus. "[T]he statute does not limit the exemption to 'current' suspects or require an active, ongoing investigation. Nor does the statute express the concept that the passage of time or the lack of follow-up prosecution erodes that statutory protection." *Moreland*, 67 Ohio St.3d at 130-131, 616 N.E.2d at 236.

---

subject to immediate release upon request" because they did not fall within the work product exception found in R.C. 149.43(A)(2)(c). *Id.* at paragraph five of the syllabus. *Steckman* did not, however, hold that an incident report failed to satisfy the first step of the two-step analysis of whether a record satisfied the definition of "confidential law enforcement investigatory record." Indeed, *Steckman*'s examination of whether R.C. 149.43(A)(2)(c) applied to an incident report—an analysis of the second step — implied that the report satisfied the first step.

{¶ 26} The incident report in this case (which includes a narrative of the incident attached to the report form) describes a homicide. It is therefore a record that pertains to a potential offense committed by the shooter, even though no one has yet been charged with any crime as a result of Huffman's death. The court of appeals correctly observed that the incident report in this case "may have led to an investigation focused on a single suspect," thereby creating a "high probability that the identity of the shooter would be disclosed." In light of this probability, the relators were entitled only to those portions of the incident report that did not create a high probability of disclosing the shooter (*i.e.*, the "uncharged suspect"). See *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 31, 661 N.E.2d 180, 186.

{¶ 27} I recognize that the public records statute should be liberally construed in favor of broad access, with any doubt resolved in favor of disclosure. See *Cincinnati Enquirer*, 75 Ohio St.3d at 376, 662 N.E.2d at 336. But this court's decisions interpreting R.C. 149.43(A)(2)(a) specifically exempt from disclosure the names of uncharged suspects, even if no charges are filed and no active investigation exists. Unless we revise our pronouncements in *Outlet Communications*, *Thompson Newspapers*, and. *Moreland*, R.C. 149.43(A)(2)(a) exempts the records at issue in this case, at least to the extent that the relators seek a fully unredacted version. I would therefore affirm the court of appeals' decision granting the writ and allowing release of an incident report omitting the identity of the shooter.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____

*Roetzel & Andress, Ronald S. Kopp* and *Stephen W. Funk*, for appellants and cross-appellees.

*Eugene P. Nevada*, for appellee and cross-appellant.

_____