The STATE ex rel. WBNS 10 TV, INC., Appellant,

v.

FRANKLIN COUNTY SHERIFF'S OFFICE et al., Appellees.

[Cite as *State ex rel. WBNS 10 TV, Inc. v. Franklin Cty. Sheriff's Office*, 151 Ohio App.3d 437, 2003-Ohio-409.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–561.

Decided Jan. 30, 2003.

438

Zeiger & Carpenter, L.L.P., John W. Zeiger, Marion H. Little Jr. and Eva C. Gildee, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, Patrick E. Sheeran and Jeffrey L. Glasgow, Assistant Prosecuting Attorneys, for appellees.

KLATT, Judge.

{¶ 1} Relator-appellant, WBNS 10 TV, Inc. ("WBNS"), appeals from a judgment of the Franklin County Court of Common Pleas dismissing its complaint in mandamus against respondents-appellees, Franklin County Sheriff's Office ("FCSO") and Sheriff James Karnes, and denying its request for attorney fees. For the following reasons, we affirm the trial court's dismissal of the action as moot but reverse and remand the matter for a determination of reasonable attorney fees.

{¶ 2} On May 16, 2001, a shooting occurred at 2573 Scioto View Lane in Columbus, Ohio. The victim, Jan Marie Wright, later died from a gunshot wound to the chest. She was shot by her husband, Richard Wright, who at the time was a Columbus Police Officer. The first law enforcement officials to arrive at the scene were officers from the Perry Township Police Department. One of those officers, John Thomas, prepared an Incident Report ("Report") as part of his investigation of the shooting. The Report consisted of a two-page document that contained 54 numbered boxes in which Officer Thomas could provide information about the shooting. There were also four "Supplementary Report" forms attached to the Report. These forms contained statements from other police officers at the scene. Lastly, there were five "Perry Township District Police Department Voluntary Statement (Not Under Arrest)" forms included by Officer Thomas in his Report. These documents contained statements of other witnesses to the shooting and were also attached to the original Report prepared by Officer Thomas.

{¶ 3} On the evening of May 16, Officer Thomas delivered the original Report with most of the attachments to the FCSO, as that office had taken over the investigation of the shooting. The attachments that were not delivered at that time (three of the four "Supplementary Report" forms) were delivered by Officer Thomas to the FCSO the next day, May 17.

{¶ 4} The shooting garnered much media attention, and, on May 17, Joel Chow, an employee of WBNS, contacted FCSO Chief Steve Martin and requested a copy of the Report pursuant to the public records law. Thereafter, Chow received a three-page fax that included two documents titled "Franklin County Sheriff's Office Official Report" and the first page of Officer Thomas's Report. Upon reviewing these pages, Chow noticed that Officer Thomas's Report referred to several witness statements. The Report contained two boxes titled "Witness 1" and "Witness 2" in which Officer Thomas had simply typed the words "See Statements." On May 18, after being unable to contact the Perry Township Police Department, Chow contacted Chief Martin again, seeking copies of the witness statements that were referred in Officer Thomas's Report. Chief Martin

refused to provide Chow with these witness statements and indicated that, if WBNS continued to insist on the production of the witness statements, WBNS "never would have anything ever from [the FCSO] again."

{¶ 5}   Later that same day, Chow told John Cardenas, the News Director for WBNS, about his conversations with Chief Martin.  Cardenas then contacted Chief Martin and made another request for the witness statements.  In a heated conversation, Chief Martin again refused to provide the witness statements, but also indicated that he was seeking legal advice from the Franklin County Prosecutor's Office.  Chief Martin stated that he expected to receive the legal advice later that afternoon and that he would then call Cardenas back.  That afternoon, Chief Martin received a legal opinion from attorney Jeff Glasgow of the Franklin County Prosecutor's Office.  In essence, Glasgow informed Chief Martin that the witness statements were public records subject to disclosure.

{¶ 6}   Chief Martin then contacted Lieutenant Robert Pendelton of the Perry Township Police Department and advised him that, if Pendelton received any public records requests for the Report, he was to release the entire Report, including the witness statements.  Chief Martin also informed his boss, Sheriff Karnes, both orally and in writing, the substance of attorney Glasgow's legal advice.  However, Chief Martin did not call or attempt to contact Cardenas that day, nor did he send WBNS the requested witness statements.  When Cardenas failed to hear from Chief Martin by late afternoon, WBNS immediately filed a verified complaint in the Franklin County Court of Common Pleas.

{¶ 7}   WBNS's complaint sought a writ of mandamus compelling the FCSO to produce the witness statements pursuant to the Ohio Public Records Act, R.C. 149.43.  On May 21, Lieutenant Pendelton released the report and witness statements to Channel 6. WBNS did not learn of this release until Channel 6 ran news stories concerning the content of the witness statements on May 21.  The following day, WBNS received the witness statements from Lieutenant Pendelton.  WBNS received these same documents from the FCSO on May 25.

{¶ 8}   On February 22, 2002, WBNS filed a motion for summary judgment on its mandamus claim and also sought an award of attorney fees.  In response, the FCSO sought dismissal of the case, claiming that, because it had already produced the contested witness statements, the case was moot.  The trial court agreed with the FCSO and dismissed the case.  The trial court also denied WBNS's request for attorney fees.

{¶ 9}   WBNS appeals, assigning the following errors:

{¶ 10}   "1. The court erred in granting respondents' motion to dismiss by declaring WBNS's mandamus action moot.

{¶ 11} "2. The trial court erred in denying WBNS's motion for summary judgment.

{¶ 12} "3. The trial court abused its discretion in denying WBNS its reasonable attorneys' fees."

{¶ 13} We will first address the issue of mootness. As a general rule, when a mandamus action is filed to enforce a public records request pursuant to R.C. 149.43, and the records which are the subject of that action are subsequently produced, the mandamus action becomes moot. *State ex rel. Calvary v. Upper Arlington* (2000), 89 Ohio St.3d 229, 231, 729 N.E.2d 1182; *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 52, 689 N.E.2d 25; *State ex rel. Taxpayers Coalition v. Lakewood* (1999), 86 Ohio St.3d 385, 392, 715 N.E.2d 179; *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 382, 700 N.E.2d 12; *State ex rel. Gannett Satellite Info. Network v. Shirey* (1997), 78 Ohio St.3d 400, 401, 678 N.E.2d 557. However, a mandamus action is not rendered moot by the subsequent production of the requested public records if there exist important issues that are capable of repetition, yet will evade review. *Shirey,* supra, at 402, 678 N.E.2d 557; *State ex rel. Margolius v. Cleveland* (1992), 62 Ohio St.3d 456, 458, 584 N.E.2d 665. This exception applies only in exceptional circumstances in which the following two factors are present: (1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *State ex rel. Calvary,* supra, citing *Spencer v. Kemna* (1998), 523 U.S. 1, 17–18, 118 S.Ct. 978, 140 L.Ed.2d 43.

{¶ 14} WBNS argues that this exception to the general rule applies and, therefore, its mandamus action is not moot. We agree that the mandamus action raises an important issue with respect to whether witness statements must be attached to an incident report before they are subject to production pursuant to a public records request. We also agree that this issue is certainly capable of repetition. However, we do not agree that this issue will necessarily evade review in the future. There is no reason why a court could not address this issue in a mandamus action if the FCSO were to refuse to comply with a similar public records request in the future. Therefore, the trial court did not err in dismissing the mandamus action on grounds of mootness. WBNS's first assignment of error is overruled.

{¶ 15} Likewise, because the FCSO's production of the requested records rendered the mandamus action moot, the trial court did not err in denying WBNS's motion for summary judgment. Therefore, WBNS's second assignment of error is also overruled.

{¶ 16}  In its third assignment of error, WBNS contends that the trial court abused its discretion in denying its request for attorney fees. The mootness of WBNS's action does not preclude an award of attorney fees. *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (2000), 89 Ohio St.3d 440, 448, 732 N.E.2d 969. " 'A court may award attorney fees pursuant to R.C. 149.43 where (1) a person makes a proper request for public records pursuant to R.C. 149.43, (2) the custodian of the public records fails to comply with the person's request, (3) the requesting person files a mandamus action pursuant to R.C. 149.43 to obtain copies of the records, and (4) the person receives the requested public records only after the mandamus action is filed, thereby rendering the claim for a writ of mandamus moot.' " Id. at 449, 732 N.E.2d 969, quoting *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 661 N.E.2d 1049, syllabus. However, even after having met these factors, "an award of attorney fees in public records cases is discretionary and is to be determined by the presence of a public benefit conferred by relator seeking the disclosure. Moreover, since the award is punitive, reasonableness and good faith of the respondent in refusing to make disclosure may also be considered." *State ex rel. Multimedia, Inc. v. Whalen* (1990), 51 Ohio St.3d 99, 100, 554 N.E.2d 1321; *State ex rel. Dillery v. Icsman* (2001), 92 Ohio St.3d 312, 316, 750 N.E.2d 156.

{¶ 17}  A decision denying a request for attorney fees will not be reversed absent an abuse of discretion. *State ex rel. Beacon Journal Publishing Co. v. Maurer* (2001), 91 Ohio St.3d 54, 57, 741 N.E.2d 511. An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude. *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.* (2000), 90 Ohio St.3d 55, 61, 734 N.E.2d 811.

{¶ 18}  The trial court determined that WBNS had established the four factors required by *Pennington* for an award of attorney fees. It does not appear that the FCSO contests this determination. It is undisputed that WBNS made a proper public records request, the FCSO failed to timely comply with that request, which led WBNS to file this mandamus action, and the FCSO ultimately produced the requested records after WBNS filed the action. Nevertheless, the trial court found that WBNS failed to show a sufficient public benefit to warrant an award of attorney fees. Under the circumstances presented, we believe that that finding constitutes an abuse of discretion.

{¶ 19}  The trial court reasoned that no public benefit would be conferred by an award of attorney fees because the parties had not had a public records dispute before or since this incident. Although this may be true, it is not particularly relevant to an assessment of public benefit. There is a manifest public benefit in rigorously enforcing public records requests because of the public's need for complete, accurate, and timely news reports concerning the

actions of government and public officials. *State ex rel. Multimedia,* 51 Ohio St.3d at 100, 554 N.E.2d 1321; *Maurer,* supra, 91 Ohio St.3d at 58, 741 N.E.2d 511. Obtaining access to public records without unreasonable delays allows the news media to provide accurate and timely news reports which clearly benefits the public at large. Therefore, this case does involve a public benefit sufficient to warrant an award of attorney fees. The fact that such an award would be paid out of the public coffers does not negate the public benefit advanced by the rigorous enforcement of the public records law.

{¶ 20} Having determined the existence of a public benefit from this mandamus action, we now turn to the reasonableness of the FCSO's conduct in failing to timely produce the witness statements. The trial court found that, after receiving legal advice from attorney Glasgow, Chief Martin should have contacted WBNS and arranged for the timely production of the witness statements. This finding supports the conclusion that Chief Martin acted unreasonably by not contacting WBNS and producing the documents. WBNS had already made two public records requests for these witness statements. Chief Martin's failure to immediately arrange for the production of these witness statements after he was told they were public records and therefore subject to disclosure was clearly unreasonable. Nevertheless, the trial court refused to award attorney fees.

{¶ 21} The FCSO argues that Chief Martin acted reasonably because the witness statements were not physically attached to the incident report, citing *State ex rel. Beacon Journal Publishing Co.,* and *State ex rel. Rasul–Bey v. Onunwor* (2002), 94 Ohio St.3d 119, 760 N.E.2d 421. However, nothing in the *Maurer* decision requires that a narrative witness statement incorporated by reference in an incident report must be physically attached to the incident report before it takes on the cloak of a public record. In fact, the rationale of *Maurer* suggests otherwise. Although the witness statements at issue in *Maurer* were attached to the incident report, the key fact was the incorporation of the statements into the report. Incorporating the statements by reference into the report made the statements part of the report, which, in turn, made them subject to production pursuant to a public records request.

{¶ 22} Nor does the *Onunwor* decision change this analysis. Nothing in *Onunwor* indicates that such witness statements must be attached to the incident report to become part of the report. In fact, *Onunwor* did not even involve an incident report that incorporated witness statements by reference. *Onunwor* simply reaffirmed the proposition that police incident reports are public records which must be produced immediately upon request. *Onunwor* does not support FCSO's contention that Chief Martin acted reasonably under these circumstances.

{¶ 23} Having determined that the FCSO acted unreasonably in failing to timely produce the witness statements after receiving legal advice that they were subject to disclosure, and that WBNS's mandamus action had an important public benefit, we find that the trial court abused its discretion in not awarding attorney fees to WBNS, and we accordingly sustain WBNS's third assignment of error.

{¶ 24} In conclusion, we overrule WBNS's first and second assignments of error and sustain its third assignment of error. Therefore, the judgment of the trial court is affirmed in part and reversed in part, and the matter is remanded to the trial court for a determination of attorney fees.

Judgment accordingly.

PEGGY BRYANT and DESHLER, JJ., concur.