[Cite as *Brandt v. Solon Police Dept.*, 2022-Ohio-3732.]

| | |
|---|---|
| PATRICIA BRANDT | Case No. 2022-00299PQ |
| Requester | Special Master Jeff Clark |
| v. | REPORT AND RECOMMENDATION |
| SOLON POLICE DEPARTMENT | |
| Respondent | |

{¶1} The Public Records Act, R.C. 149.43, provides that upon request, a public office "shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). Ohio courts construe the Public Records Act liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, ¶ 12. R.C. 2743.75 provides "an expeditious and economical procedure" to resolve public records disputes in the Court of Claims.

{¶2} On November 9, 2021, requester Patricia Brandt made a public records request to respondent Solon Police Department (Solon PD) for:

Police Report No. 21-00372
Investigative file for Police Report No. 21-00372
Videos and photos maintained as records for Police Report No. 21-00372
Victim statement(s) maintained as a record(s) for Police Report No. 21-00372
Witness statements maintained as record(s) for Police Report No. 21-00372
List of evidence collected and maintained as records for Police Report No. 2100372.

(Complaint, Exh. 1.) Solon PD responded the same day with a redacted copy of the first page of the Incident/Offense Report for Incident Number 21-00372. (*Id.*, Exh. 3.) In response to a follow-up letter from Brandt (*Id.*, Exh. 4), on November 24, 2021 Solon PD provided redacted copies of the first nine pages of the report along with explanations,

including legal authority, setting forth its explanation for the redactions. (*Id.*, Exh 5.) Solon PD did not provide any videos or photos. Solon PD advised that the file for Incident No. 21-00372 contained an additional 33 pages of Investigative Report Supplement Narratives. (*Id.*)

{¶3} On April 5, 2022, Brandt filed her complaint pursuant to R.C. 2743.75 alleging denial of access to public records in violation of R.C. 149.43(B). Brandt seeks "[i]mmediate release of Incident/Offense Report Form No. 21-00372 in its entirety, or as determined by this Court," and various sanctions. (Complaint at 19-20.) On June 13, 2022, following unsuccessful mediation, Solon PD filed an answer (Response) and a motion to dismiss (MTD). On June 30, 2022, Solon PD filed its response to the court's order of June 14, 2022 (First Supp. Response) and has filed a complete and unredacted copy of the withheld records under seal (Sealed Records). On August 9, 2022, Solon PD filed a response to an order of July 27, 2022 (Second Supp. Response). On August 11, 2022, Brandt filed a reply. On September 23, 2022, Solon PD filed a response to an order of September 16, 2022 (Third Supp. Response).

**Burden of Proof**

{¶4} The requester in an action under R.C. 2743.75 bears an overall burden to establish a public records violation by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.). The requester bears an initial burden of production "to plead and prove facts showing that the requester sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 33.

{¶5} If a public office asserts an exception to the Public Records Act as the basis for withholding records, the burden shifts to the public office to establish its applicability:

> Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian

does not meet this burden if it has not proven that the requested records fall squarely within the exception.

*State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus; *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 256, ¶ 35 (application of specific investigatory work product exception to dash-cam video).

### Motion to Dismiss

{¶6} To dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt the claimant can prove no set of facts warranting relief after all factual allegations of the complaint are presumed true and all reasonable inferences are made in claimant's favor. *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580, 581, 669 N.E.2d 835 (1996). As long as there is a set of facts consistent with the complaint that would allow the claimant to recover, dismissal for failure to state a claim is not proper. *State ex rel. V.K.B. v. Smith*, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, ¶ 10.

{¶7} Solon PD does not dispute that Brandt reasonably identified the records she seeks but moves to dismiss the complaint on the grounds that, 1) Brandt's claims are moot, and 2) all withheld records are exempt from release as specific investigatory work product under R.C. 149.43(A)(1)(h) and (A)(2)(c). (MTD at 3-6.) On review, the Special Master finds that neither mootness nor comprehensive application of the claimed exemption is conclusively shown on the face of the complaint. Moreover, as the matter is now fully briefed these grounds are subsumed in the arguments to deny the claim on the merits. It is therefore recommended the motion to dismiss be denied.

### Suggestion of Mootness

{¶8} In an action to enforce R.C. 149.43(B), a public office may produce the requested records prior to the court's decision, and thereby render the claim for production moot. *State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d 952, ¶ 18-22. Solon PD asserts that it provided Requester with the available public

records responsive to her requests and the justification for its redactions and withholdings as investigatory work product. (MTD at 3.) Brandt agrees Solon PD provided nine pages of redacted records. (Reply at 5.) However, she disputes the validity of some redactions and asserts that Solon PD has failed to produce additional portions of the incident report that are not covered by the specific investigatory work product exception. (*Id.* at 7-10.) The Special Master finds the claim for production of records partially moot to the extent that portions of the first nine pages of the incident report have been produced.

{¶9} Independent of the claim for production, Brandt's claim of an unreasonable fifteen-day delay between the request and production of the first nine pages of a plainly public initial incident report is not moot. (Complaint at ¶ 31, 44; Reply at 6-7.) "[A] separate claim based on the untimeliness of the response persists unless copies of all required records were made available 'within a reasonable period of time.' R.C. 149.43(B)(1)." *State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 22, 2018-Ohio-5110, 123 N.E.3d 895, ¶ 19.

### The Initial Incident Report and Contemporaneous Narratives, Interviews, and Incorporated or Attached Records Must Be Disclosed

{¶10} Solon PD does not dispute that the first nine pages of Report No. 21-00372 must be released as routine initial reporting of an incident. However, Solon PD denies that three pages of contemporaneous responding officer narratives, and the video and photographic material incorporated in the initial report by reference, must be released.

### Initial Incident Reports

Offense-and-incident reports are form reports in which the law enforcement officer completing the form enters information in the spaces provided. See, e.g., *State ex rel. Beacon Journal Publishing Co. v. Maurer* (2001), 91 Ohio St.3d 54, 2001 Ohio 282, 741 N.E.2d 511 (referring to an "Ohio Uniform Incident Form").[1]

---

[1] The form is contained in the *Ohio Uniform Incident Report (UIR) Training Manual* (Aug. 2011), https://ocjs.ohio.gov/oibrs/links/forms/UIR_Training.pdf (Accessed Sept. 14, 2022.) The UIR is published by the Ohio Dept. of Public Safety, Office of Criminal Justice Services and designed to capture crime data for the Ohio Incident-Based Reporting System and the FBI National Incident-Based Reporting System.

*State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 13. Offense and incident reports exist in a variety of paper and electronic formats adapted by each law enforcement agency for its purposes. See, e.g., *State ex rel. Miller v. Pinkney*, 149 Ohio St.3d 662, 2017-Ohio-1335, 77 N.E.3d 915, Appendix.

{¶11} It is well-settled that "incident reports initiate criminal investigations but are not part of the investigation." *State ex rel. Beacon Journal Publishing Co. v. Maurer*, 91 Ohio St.3d 54, 56, 741 N.E.2d 511 (2001). Where a deputy's incident report attached statements of officers and other witnesses and referenced them in the narrative used to describe events, *Maurer* at 54, "[h]e consequently incorporated them in a public record." *Id.* at 56. The Court concluded, "We hold that this report, including the typed narrative statements, is not a confidential law enforcement investigatory record." *Id.* "However, nothing in the *Maurer* decision requires that a narrative witness statement incorporated by reference in an incident report must be physically attached to the incident report before it takes on the cloak of a public record." *State ex rel. WBNS 10 TV v. Franklin Cty. Sheriff's Office*, 151 Ohio App.3d 437, 2003-Ohio-409, 784 N.E.2d 207, ¶ 21.

{¶12} Solon PD's withholding of three pages of contemporaneous responding officer narratives closely resembles the facts in *State ex rel. Myers v. Meyers*, Slip Opinion No. 2022-Ohio-1915, where the Supreme Court found it necessary to

> address the issue whether an offense-and-incident report, which initiates a police investigation and is a public record under Ohio's Public Records Act, R.C. 149.43, is limited to the form that police officers fill out in order to report the incident or whether it also includes contemporaneous reports created by the investigating officers that document the officers' observations and the statements of witnesses at the scene.

(*Id.* at ¶ 1.) The Court first reiterated:

> Our case law provides two bases for determining whether documents qualify as part of the public-record incident report. The first is whether the document constitutes a regular incident-report form on which officers have filled in blanks with information. *See Lanham*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 13. The second is whether the information provided initiates the investigation, *Maurer*, 91 Ohio St.3d at 56-57, 741

N.E.2d 511, as opposed to constituting work product generated after the investigation is under way.

*Id.* at ¶ 40. Under the heading "*Some supplement narratives are public records*," the Court reasoned that the timing and nature of any "narrative derived directly from the party reporting the facts of the at-issue offense or incident to the Department," as well as "responding officer's observations and witness statements" taken the same day, show that the "information initiates the investigation" and

> properly constitutes part of the public record incident report, even though the officer elected to label that information as a "supplement" narrative rather than an "initial narrative."

*Id.* at 42-44. The Court summarized:

> We hold that when a police department maintains both incident-report forms and investigatory work product as part of the same overall investigatory record, officers' reports that contain their observations at the time that they are responding to an incident, along with initial witness statements taken at the time of the incident or immediately thereafter, are incident-report information that is a public record and may not be withheld from disclosure as "specific investigatory work product" under R.C. 149.43(A)(2)(c). To use the terminology of this opinion, supplement narratives that contain incident information are part of the public-record incident report, *even though officers have neither included that information on the incident-report form nor incorporated it into the "initial narrative."*

(Emphasis added.) *Id.* at ¶ 45. In the context of sexual assaults, the Court treated the "initial" phase of incident reporting as commencing upon the first victim or witness contact with the police department, *Id.* at ¶ 49, 50, 96, 97, 100, even if that first contact was made years after the alleged incident. *Id.* at ¶ 49, 96.

{¶13} Notably absent as a factor is the duty assignment or rank of the officer gathering the initial information. Otherwise, a law enforcement agency could thwart disclosure of initial incident information by assigning a detective or ranking officer to every criminal matter before an incident report is made. See *Daily Gazette Co., Inc. v. Withrow* (1986), 177 W. Va. 110, 117, 350 S.E.2d 738, fn. 5 (public body may not conceal its

otherwise public writings merely by having an attorney prepare them), cited with approval in *State ex rel. Findlay Publ. Co. v. Hancock County Bd. of Commrs.*, 80 Ohio St.3d 134, 137-138, 684 N.E.2d 1222 (1997). The *Meyers* Court accordingly ordered disclosure of all supplement narratives containing factual incident information, including those noting that detectives had already "opened an investigation into a possible sexual assault." *Id.* at ¶ 49 and 50. In determining which supplement narratives contain incident information,

> the most important factor is timing—the initial observations by officers and the initial witness statements taken at the physical location close to the time that the incident occurred constitute incident information that may not be regarded as specific investigatory work produce, *even when the information has not been incorporated into the incident-report form.*

(Emphasis added.) *Id.* at ¶ 47. The review must evaluate whether the "timing and nature of the content shows that the information initiates the investigation." *Id.* at ¶ 44, 47. The Court also disregarded agency titling, resolving the status of each narrative based on "the timing and nature of the content * * *, even though the officer elected to label that information as a 'supplement' narrative rather than an 'initial' narrative." *Id.* at ¶ 44.

{¶14} Supplement narratives generated days after the initial incident report are not part of that public record if they neither contain information included in the report form nor supply information that "initiated the investigation." *Id.* at ¶ 41. The Court could not draw a bright line defining when the investigation phase has been *initiated* or *is under way*. However, the burden is on the law enforcement agency to prove that any withheld incident record falls squarely within the full case law definition of specific investigatory work product, and the exception is strictly construed against the agency. *Enquirer v. ODPS*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 256, ¶ 35.

**Incident/Offense Report No. 21-00372**

{¶15} Solon PD officers utilized a departmental fill-in-the-blanks form to initiate the investigation of the incident in this case. The first page is titled Incident/Offense Report No. 21-00372 and shows a "Report Date/Time" of Monday 03/08/2021 at 18:22:0. Review of the report *in camera* shows that the three pages immediately following page nine were

authored by the initially assigned officers and were completed on 03/08/2021 or reviewed taped victim information the next day.[2] All three pages reflect initial factual information received from the victim on March 8, 2021.

{¶16} The victim came to the Solon PD on March 8, 2021 to report a sexual offense. (Sealed Records/BATES STAMPED/Solon PD Records–In Camera Inspection– 1-399, p. 10.) Before interviewing her, Ptl. Joseph R. Randazzo spoke with a detective who directed him to get the details of what happened and report back to her. Randazzo brought the victim and her mother into an interview room and recorded the ensuing interview. At minute 9:00 of the interview video Randazzo advised the victim a detective would now meet with her and left the room. (Sealed Records/Attachments/[victim's name]_Interview 1.) Ten minutes later Det. Linda Castro entered the room and continued the interview. (*Id.*) Castro advised the victim "that she would be contacted for a longer interview and that officers would be only collecting *initial information* at this time." (Emphasis added.) (Sealed Records/BATES STAMPED/Solon PD Records–In Camera Inspection–1-399, at p. 11.) Randazzo entered information received from the victim into the first ten pages of the incident report and the footer on the tenth page of the report is dated 03/08/2021 at 18:22:0. (*Id.* at p. 1-10.) Castro entered information received from the victim into pages eleven and twelve. The first four paragraphs of page eleven describe her portion of the victim interview and the remaining text describes her March 9, 2021 review of the recorded interview. The footers on pages eleven and twelve of the report are dated 03/09/2021 at 15:34:4. (*Id.* at p. 11-12.)

{¶17} Notably, the initial Narrative field at the bottom of the first page of the report form as released to Brandt contains only the words "NOT FOR PUBLIC." (Complaint at 28.) Brandt assumed this was an indication of that the narrative text had been redacted (Reply at 9) but review *in camera* shows only the same words in this field - no narrative

---

[2] In addition to the Report Date/Time shown at the top of page 1, and the Date of Contact reported in the Persons Involved fields, note the Date in the reporting officer line at the bottom of form pages. (Third Supp. Response at 2); UIR Manual at 45.

text was ever entered in the field. Instead, Solon PD accomplished the same result by preemptively rerouting that text to a separate, withheld page – Randazzo's initial narrative on p. 10 of the report – and giving notice to the public that the initial narrative of the incident was "NOT FOR" them.[3] Solon PD offers no support for the proposition that relocation of the initial incident narrative somehow makes it "investigatory."

{¶18} Pages two through seven are titled Persons Involved with Incident and contain identification, contact, and relation information. Pages eight and nine are titled Property Involved with Incident and refer to three items: 1) a video surveillance recording, 2) unspecified clothing from victim, and 3) the victim's shirt. Page ten, completed by Randazzo, is titled Investigative Report, dated 03/08/2021 at 18:22:0, and contains Randazzo's narrative of the victim's arrival and interview at Solon PD up through and including his departure from the interview room. Pages eleven and twelve, completed by Det. Castro, are titled Investigative Report,[4] dated 03/09/2021 at 15:34:4 and contain Castro's narrative of her continuation of the initial interview of the victim on 03/08/2021 and her review the next day of the previous day's recording of the interview.

{¶19} The *Myers* Court found similar initial information-gathering documents to be narratives of "incident information," including an instance where a second supplement narrative was made by a second officer. *Myers* at ¶ 49, 52-53. Based on timing, content, and authorship, the Special Master finds that Sealed Records/BATES STAMPED/Solon PD Records–In Camera Inspection–1-399, p. 1-12 and all contemporaneous records referenced therein constitute the initial incident report for Incident No. 21-00372.

**Videotaped Victim Interview**

{¶20} In *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 5-15, 45-50, a highway patrol dash-cam recording made during a vehicle chase and arrest included audio and video of the officer's

---

[3] Contrast this initial narrative export and withholding with *Myers* at ¶ 14-26, where the Chillicothe PD voluntarily disclosed report text labeled as initial narratives.

[4] Despite this nominal title, the contents reflect incident information received from the victim.

communication with other patrol personnel, investigation inquiries, and factual information from the suspect. The recording was made prior to creation of and was not attached to the incident report. The Court found that only a 90-second portion of the recording where the officer Mirandized and questioned the suspect was "investigatory" work product. Applying the reasoning of *Maurer at 56, Myers at ¶ 45*, and *Enquirer v. ODPS,* the video recording of the victim's initial interview on 03/08/2021 was made prior to the creation of Incident/Offense Report No. 21-00372, was incorporated by reference therein at p. 10, contains incident information that initiated the investigation, and is thus public record. The initial incident report likewise includes any photographic or other records documenting items gathered by Solon PD on March 8, 2022, e.g., as noted in the fourth paragraph of page SLNPD-INCAMERA-0000011 and pages 0000016 and 0000370 through 0000374, as noted in the Affidavit of Det. Castro. (Second Supp. Response, Exh. A.) (Third Supp. Response at 2-3.)

{¶21} However, the Public Records Act does not entitle a requester to access any item of physical evidence. 2007 Ohio Op.Atty.Gen. No. 2007-034 (untested cigarette butt taken from a crime scene is not a "record"). Nor is subsequent forensic testing of initially gathered physical evidence, conducted months later and not initiating the investigation, swept into the initial incident report, e.g., matters referenced in SLNPD-INCAMERA-0000042 and 0000044.

**Records that are Investigatory Work Product**

{¶22} Pages thirteen through seventy-three are form pages titled Investigative Report, dated 03/10/2021 through 04/07/22, signed by Detectives Castro or Harvey. These pages reflect later investigatory interviews with persons involved in the incident and accounts of officer investigatory actions that took place days or more after the initial incident report and victim interview. Solon PD has asserted no additional public records exemptions for the contents of these records.

**{¶23}** Brandt argues that all form report pages, and 14 written witness statements, "detained property," police body camera footage, and all other items created or gathered on dates after March 9, 2021, do not qualify as specific investigatory work product because "Solon police officers gathered [these] facts, information, and property withheld during while [*sic*] working in their official capacity as sworn peace officers * * * and then created an Initial Incident Report upon which they recorded their gathered facts, information, and property withheld and narrative summary." (Reply at 7-8.) Brandt applies obsolete reasoning from cases overruled by *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994). These previous cases separated the law enforcement incident response into 1) "objective facts and observations [an investigator] has recorded" that were public, and 2) his "deliberative and subjective analysis, his interpretation of the facts, his theory of the case, and his investigative plans" that were confidential work product. *Id.* at 431, 434. The *Steckman* Court rejected the fact/opinion dichotomy for a framework of initial incident report fact-gathering (public) vs. the "initiated" investigation in anticipation of litigation (exempt), holding that

> information assembled by law enforcement officials in connection with a probable or pending criminal proceeding is, by the work product exception found in R.C. 149.43(A)(2)(c), excepted from required release as said information is compiled in anticipation of litigation. The work product exception does not include ongoing routine offense and incident reports, including, but not limited to, records relating to a charge of driving while under the influence and records containing the results of intoxilyzer tests.

*Id.* at 435.

**{¶24}** Ohio courts have clarified *Steckman* as to the materials that must be disclosed as "ongoing routine [initial] incident reports." See *State ex rel. Beacon Journal Publ. Co. v. Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511 (2001); *Narciso v. Powell Police Dept.*, Ct. of Cl. No. 2018-01195PQ, 2018-Ohio-4590, ¶ 19-25 and cases cited therein. As detailed in these cases, the initial/routine/regular incident report does not include later investigatory notes, updates, and reports, even if they constitute "fact work product" rather

than "opinion work product." *Myers* at ¶ 33, fn. 1. After the point where an investigation has been initiated, the subsequent work product of investigators, including the reporting officer, are presumptively "investigatory" work product. *See State ex rel. Fields v. Cervenik*, 8th Dist. Cuyahoga No. 86889, 2006-Ohio-3969, ¶ 2-7; *Gannet GP Media, Inc. v. Chillicothe Police Dept.* Ct. of Cl. No. 2017-00886, 2018-Ohio-1552, ¶ 14, 19. The *Myers* Court thus rejected the requester's contention that all supplement narratives in the incident report form were *ipso facto* public-records, holding that "[i]nstead, the public-record status of the supplement narratives depends on the standards we have developed in the case law." *Myers* at ¶ 36-39. Moreover, the mere fact that names of involved persons appear in the incident report (and are public record there) does not automatically incorporate the entire investigative supplement narrative or interview from which the names were obtained and backfilled into the report. See *Id.* at ¶ 41, fn. 2. (See Third Supp. Response at 3.)

{¶25} The bases for determining whether documents filed under seal in this case qualify as part of the public-record incident report are summarized in the following table:

| Description | Location | Reason Not "Investigatory Work Product" |
|---|---|---|
| Ptl. Randazzo's narrative of victim's arrival at PD and her account of alleged offense | Sealed Records/ BATES STAMPED/ Solon PD Records – In Camera Inspection – 1- 399, p. 10 | Part of a regular incident-report form. Content derived directly from the party reporting facts to the PD. Contemporaneous - made same date and time as first nine report pages. Made by one of the first responding officers. Information initiated the investigation. |

| Det. Castro's narrative of continuation of victim's account of alleged offense | Sealed Records/ BATES STAMPED/Solon PD Records – In Camera Inspection – 1- 399, p. 11 (all text prior to "On March 9th, 2021") | Part of a regular incident-report form. Content derived directly from the party reporting facts to the PD. Contemporaneous - made same date and time as first nine report pages. Made by one of the first responding officers. Information initiated the investigation. |
|---|---|---|
| Det. Castro's narrative observations on review of victim's 03/08/2021 recorded account of alleged offense | Sealed Records/ BATES STAMPED/ Solon PD Records – In Camera Inspection – 1- 399, p. 11-12 (all text following "On March 9th, 2021") | Part of a regular incident-report form. Content derived directly from the party reporting facts to the PD. Information initiated the investigation. Although signed on 03/09/2021, the text describes only interview activity on 03/08/2021 – i.e., a supplement narrative that contains "incident information." *Myers* at ¶ 45. |
| 03/08/21 video recording of Randazzo initial victim interview | Attachments/[victim's name]_Interview 1 (Minutes 00:00 through 18:50) | Content derived directly from the party reporting facts to the PD. Recording made prior to the report. Incorporated by reference in initial narrative (Report p. 10.) Made by one of the first responding officers. Information initiated the investigation. |
| 03/08/21 video recording of Castro initial victim interview | Attachments/[victim's name]_Interview 1 | Content derived directly from the party reporting facts to the PD. Recording made prior to the report. |

| | (Minutes 18:51 through 37:34) | Incorporated by reference in initial narrative (Report p. 10.) Made by one of the first responding officers. Information initiated the investigation. |
|---|---|---|
| USB containing video surveillance from Swirl Wine Bar | No location provided by respondent | Referenced in regular incident-report form. (Report p. 8.) |
| Any 03/08/2021 photos of clothing from victim | Sealed Records/ BATES STAMPED/ Solon PD Records – In Camera Inspection – 1-399, p. 370-374 | Referenced in regular incident-report form. (Report p. 8.) Placed into evidence on 03/08/2021. (Report at 11.) |
| Any 03/08/2021 photos of victim's shirt | Sealed Records/ BATES STAMPED/ Solon PD Records – In Camera Inspection – p. 370-374 | Referenced in regular incident-report form. (Report p. 8.) Placed into evidence on 03/08/2021. (Report at 11.) |
| Other records of incident information created or obtained on 03/08/2021. | As noted in fourth paragraph of page SLNPD-INCAMERA-0000011, discussed at page 0000016 and Castro Aff. (Second Supp. Response, Exh. A.) (Third Supp. Response at 2-3.) | Contemporaneous - made same date and time as first nine report pages. Information initiated the investigation. |

{¶26} The Special Master finds after review *in camera* that form pages 13 through 73 of the Incident/Offense report, and all notes, reports, evidence, and other non-form

report materials created and assembled after March 8, 2021 and not specifically addressed in this table did <u>not</u> initiate the investigation but constitute investigatory work product generated after the investigation was under way. *Myers* at ¶ 40 These later records are exempt from disclosure by R.C. 149.43(A)(1)(h) and (A)(2)(c) until the investigation has concluded by criminal trial or is otherwise closed. *Id.* at ¶ 32.

{¶27} Finally, contrary to Brandt's representation (Complaint at 2, ¶ 2) there is no evidence before the court that Solon PD dispatched officers to the Swirl Wine Bar on March 8, 2021 to respond to the person reporting harm. Clear and convincing written and video evidence shows that the person reporting harm came to the Solon PD building to file her report on March 8, 2021. Solon PD affirms that "[t]he first time Solon Police Department officers visited Swirl Wine Bar as part of their response to and investigation of the Incident is noted at the top of page SLNPD-INCAMERA-0000013," which reflects a date later than March 8, 2022. (Third Supp. Response at 1-2.)

**Social Security Numbers and Statutory "Personal Information"**

{¶28} Social security numbers (SSNs) are subject to several public records exceptions. R.C. 149.43(A)(1)(dd) incorporates by reference R.C. 149.45(A)(1)(a), "an individual's social security number," as an exception applicable to all public records. R.C. 149.43(A)(1)(dd) further permits withholding of specified driver's license, banking, and credit card information. SSNs are also generally subject to a constitutional privacy right. *State ex rel. Montgomery Cty. Pub. Defender v. Siroki*, 108 Ohio St.3d 207, 2006-Ohio-662, 842 N.E.2d 508, ¶ 17-18; *Beacon Journal Publ'g Co. v. Akron*, 2004-Ohio-6557 at ¶ 55. Although not briefed by Solon PD, the Special Master recommends that the court permit the department to redact any SSNs and other statutory "personal information" from records ordered disclosed.

{¶29} Solon PD has not asserted any public records exemption for the name of a victim contained in an initial incident report, nor is the Special Master aware of any that would be applicable under the facts and circumstances of this case. However, Brandt

expressly agreed to redaction of the victim's name from the report and narrative (Complaint at 30) and the court therefore need not consider that issue.

**Timeliness**

{¶30} "Routine offense and incident reports are subject to *immediate release* upon request." (Emphasis added.) See *State ex rel. Steckman v. Jackson,* 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), paragraph five of the syllabus. Solon PD claims it made its pre-litigation response timely and with "good faith explanation, with legal authority, to justify the redactions and exemption of non-public records." (Response at 2.) However, Solon did not produce the first nine pages of the regular initial incident report for fifteen days and has not produced the contemporaneous narratives, interview video or other records referenced in the report for the last ten months and counting. No well-informed public office would reasonably believe that failure to release at least the first nine pages of the initial incident report *immediately* did not constitute failure to comply with long-standing obligations imposed by R.C. 149.43(B)(1) and the relevant case law.

As the Supreme Court stated in *Myers*:

> In *Steckman*, 70 Ohio St.3d 420, 639 N.E.2d 83, and in later cases, we stated that incident reports constitute public records and do not constitute confidential work product. Here, the city did not misunderstand Myers's request; instead, it misunderstood its clearly established duties under R.C. 149.43. Accordingly, the city violated its statutory obligation under R.C. 149.43(B)(1) to promptly provide the incident-report forms to Myers, and Myers is entitled to statutory damages.

*Myers* at ¶ 61-62. The Supreme Court found that as little as three days from a request for an incident report to its disclosure constituted failure to promptly provide the report. *Id.* at ¶ 27-28, 60. The Special Master accordingly finds that the fifteen-day delay in the instant case is a violation of R.C. 149.43(B)(1). However, neither statutory damages nor attorney fees are available in this special statutory action under R.C. 2743.75.

**Conclusion**

{¶31} Upon consideration of the pleadings, attachments, and responsive records filed under seal, the Special Master recommends the court issue an order granting the claim for production of records as detailed in the text and table above. The Special Master further recommends the court find that respondent may redact exempt items from its records as expressly provided in the report. It is the responsibility of respondent to release any additional records, properly redacted, in conformity with the findings and order issued by the court. *State ex rel. Toledo Blade Co. v. Telb*, 50 Ohio Misc.2d 1, *11-12, 552 N.E.2d 243, 251 (C.P.1990). The Special Master further recommends the court find that respondent failed to produce all public records in a reasonable period of time. The Special Master recommends the court order that requester is entitled to recover from respondent the costs associated with this action, including the twenty-five-dollar filing fee. R.C. 2743.75(F)(3)(b).

{¶32} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFF CLARK
Special Master

Filed September 27, 2022
Sent to S.C. Reporter 10/20/22