[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Myers v. Meyers*, Slip Opinion No. 2022-Ohio-1915.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-1915

THE STATE EX REL. MYERS *v.* MEYERS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Myers v. Meyers*, Slip Opinion No. 2022-Ohio-1915.]**

*Mandamus—Public Records Act—The time at which a law-enforcement officer creates a record or the police department's method for maintaining such a record determines whether the exemption to disclosure under R.C. 149.43(A)(2)(c) applies—Partial writ of mandamus granted.*

(Nos. 2020-1469 and 2021-0211—Submitted October 5, 2021—Decided June 9, 2022.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In these two consolidated original actions, we address the issue whether an offense-and-incident report, which initiates a police investigation and is a public record under Ohio's Public Records Act, R.C. 149.43, is limited to the

form that police officers fill out in order to report the incident or whether it also includes contemporaneous reports created by the investigating officers that document the officers' observations and the statements of witnesses at the scene. Relator, Derek J. Myers, seeks a writ of mandamus requiring respondents, the city of Chillicothe; its police chief, Ron Meyers ("police chief"); and the police department's records clerk, Mica Kinzer (collectively, "Chillicothe" or "the city"), to disclose the "supplement narratives" that the city withheld when Myers had requested the public-record incident reports. The city asserts that it properly withheld the supplement narratives on the ground that such a narrative constitutes a confidential law-enforcement investigatory record ("CLEIR")—specifically, "investigatory work product" under R.C. 149.43(A)(2)(c). In addition to the writ of mandamus, Myers also requests awards of statutory damages, attorney fees, and court costs.

{¶ 2} We grant the writ with respect to a limited number of supplement narratives but deny it as to the majority of the supplement narratives. We also grant Myers an award of statutory damages for the city's delayed production of certain incident-report forms, but we deny in part Myers's claim for statutory damages on the ground that we do not "stack" statutory damages. Finally, we award court costs to Myers, but we deny his request for an award of attorney fees.

## I. BACKGROUND

### A. The Chillicothe police department's public-records policy

{¶ 3} The city presented the affidavit of the police chief to explain its public-records policy. That affidavit provides the best starting point for understanding the status of the public-records requests at issue in these cases.

{¶ 4} According to the police chief, the department "generates investigatory records after it receives a complaint from the public that pertains to potential violations of criminal laws." After receiving a complaint, "an officer is then dispatched to the location of the incident to investigate." But because the officer

2

"begin[s] the investigation immediately after being dispatched, the officer often does not create the offense-and-incident report until after [he or she] leave[s] the scene of the incident." Based on the filled-in incident-report forms generated by the investigating officers, Kinzer prepares a daily media report and distributes it to various media recipients.

{¶ 5} In his affidavit, the police chief states that there are "three sources of information" that make up what he refers to as an "investigatory record": (1) the "standard, fill-in-the-blank information that identifies the investigation status, investigating officer, date, location, and offense information, all of which the investigating officer enters," (2) the "initial narrative section that the investigating officer generates," which "identifies the offense alleged, the location of the incident, and whether the investigation is ongoing," and (3) "supplement narratives," which "contain the personal notes of the investigating officer regarding the incident, summarizing witness and victim interviews, and evaluating the alleged offense." The supplement narratives also contain "specific details of the crime alleged, the identities of the victim, witnesses, and alleged perpetrator, and other related information."

{¶ 6} In responding to a public-records request for an "investigatory record," the department "generally does not disclose the supplement narratives for the record, so long as the related investigation remains ongoing." The department views supplement narratives as "confidential law enforcement investigatory records, since they are the investigating officer's work product." But the department does disclose upon request the incident-report form plus the "initial narrative," which is authored by the investigating officer.

{¶ 7} The police chief's affidavit further explains that once an investigation is closed, the department "disclose[s] the entire investigatory record, consisting of both the offense-and-incident reports and the supplement narratives." The purpose of that policy is to "prevent the public disclosure of detailed information of an

investigation while it is ongoing," a practice that "protects witnesses, victims, and suspects from potential harassment."

{¶ 8} In discussing the status of the records requests, we adopt the following terminology for purposes of this opinion. What the police chief refers to as "the standard, fill-in-the-blank information," we will call "the incident-report form." As for the two types of narratives, we will follow the police chief's terminology and call them the "initial narrative" and the "supplement narratives." Finally, we will use the phrase "public-record incident report" to refer to those documents that must be disclosed under the Public Records Act.

{¶ 9} This terminology permits us to state succinctly the nature of the parties' disagreement. Myers argues that the public-record incident report includes the supplement narratives, while the city maintains that the public-record incident report is limited to the incident-report form and the initial narrative.

### B. Case No. 2020-1469

{¶ 10} Myers is the editor and proprietor of the publication the *Scioto Valley Guardian*. As part of his work, Myers regularly submits public-records requests seeking the disclosure of public-record incident reports. Kinzer sends a daily media report through an email-distribution service to media recipients like Myers. For each new investigation, Kinzer's media report contains the case number, the offense charged, any relevant names, the date and time, and the address of the incident.

{¶ 11} On November 20, 2020, Myers sent an email reply to Kinzer's media report that stated: "Hello, please send P2015185," which he intended as a request for the public-record incident report relating to the investigation with that number. Approximately two hours after sending his first email, Myers sent Kinzer a second email stating, "Please let me know whether you will be sending this report today. If you deny the request, please cite your reasoning and law." Around the time that Myers sent his first email to Kinzer, he also emailed the police chief and stated that "we must address the persisting issue of your records department denying public

4

records requests for police reports, citing open investigations." That day, the police chief gave the following response: "When investigations are completed and able to be released, they are," but that when a matter "is under investigation, until reviewed, it stays as a work in progress." On November 23, Kinzer informed Myers that she "was told that [the report he had requested] is not to be released at this time because it is still being investigated." Notably, Kinzer did not fulfill the department's policy that was described by the police chief in his affidavit: Kinzer did not disclose the incident-report form with the initial narrative when Myers made his request.

{¶ 12} On December 4, 2020, Myers filed a complaint for a writ of mandamus in this court (case No. 2020-1469) to obtain the public-record incident report for investigation No. P2015185. On December 11, the police chief formally denied Myers's request, citing the CLEIR exception in R.C. 149.43(A)(2)(c). The police chief reiterated that the record would be released after the investigation was complete.

{¶ 13} The city belatedly disclosed the incident-report form on January 8, 2021, along with the initial narrative but withheld the supplement narratives. Myers filed an amended complaint on March 18, 2021, stating that the city's disclosure on January 8 consisted of only a "truncated version of P2015185."

### C. Case No. 2021-0211

{¶ 14} After making the records request at issue in case No. 2020-1469, Myers requested eight additional public-record incident reports. Those additional public-records requests followed the basic pattern of the request in case No. 2020-1469. As she had with Myers's earlier request, in five of Myers's later requests, Kinzer initially relied on the media report she had already sent and did not promptly disclose the incident-report forms. For three of the public-record incident reports that Myers requested in case No. 2021-211, the city promptly disclosed the

incident-report form along with the initial narratives but withheld the supplement narratives.

{¶ 15} On February 16, 2021, Myers filed the complaint for a writ of mandamus in case No. 2021-0211 to obtain all eight of what he claims are the public-record incident reports that he requested (which include, according to his argument, the supplement narratives). Two business days after Myers filed that complaint, the city disclosed five incident-report forms along with the initial narratives and also disclosed the supplement narratives in four cases in which the city deemed the investigation to be complete.

{¶ 16} We consolidated case Nos. 2020-1469 and 2021-0211 and granted an alternative writ. 162 Ohio St.3d 1441, 2021-Ohio-1398, 166 N.E.3d 1269. In response to the alternative writ, the city submitted the supplement narratives that it had withheld for in camera review by this court.

### D. The status of Myers's public-records requests

{¶ 17} For the sake of clarity, we outline the status of Myers's nine records requests at issue.

{¶ 18} Request No. 1 (case No. 2020-1469): investigation No. P2015185. Myers emailed this public-records request on November 20, 2020. The city initially denied this request. The city provided Myers the incident-report form and the initial narrative on January 8, 2021, but withheld the supplement narratives.

{¶ 19} Request No. 2 (case No. 2021-0211): investigation No. 18-019929. Myers emailed this request on December 6, 2020. The city initially denied this request. The city provided Myers the incident-report form and the initial narrative on February 18, 2021, but withheld the supplement narratives. This request is at issue in case No. 2021-0211, as are all the subsequent requests in this list.

{¶ 20} Request No. 3: investigation No. P2015431. Myers emailed this request on December 8, 2020. The city initially denied this request. The city

provided Myers the incident-report form and the initial narrative on February 18, 2021, but withheld the supplement narratives.

{¶ 21} Request No. 4: investigation No. 2015437. Myers emailed this request on December 8, 2020. The city initially denied this request. The city provided Myers the incident-report form and the initial narrative on February 18, 2021. The city also disclosed the supplement narratives on that date because the investigation was closed.

{¶ 22} Request No. 5: investigation No. 2015499. Myers emailed this request on December 10, 2020. The city initially denied this request. The city provided Myers the incident-report form and the initial narrative on February 18, 2021, but withheld the supplement narratives.

{¶ 23} Request No. 6: investigation No. P2015606. Myers emailed this request on December 15, 2020. The city initially denied this request. The city provided Myers the incident-report form and the initial narrative on February 18, 2021. The city also disclosed the supplement narratives on that date because the investigation was closed.

{¶ 24} Request No. 7: investigation No. P2100231. Myers emailed this request on January 18, 2021. The city provided Myers the incident-report form and the initial narrative on January 19, 2021, but initially withheld the supplement narratives. On February 18, 2021, the city disclosed the supplement narratives because the investigation was closed.

{¶ 25} Request No. 8: investigation No. P2100318. Myers emailed this request on January 22, 2021. The city provided Myers the incident-report form and the initial narrative on the same day but withheld the supplement narratives. On February 18, 2021, the city disclosed the supplement narratives because the investigation was closed.

{¶ 26} Request No. 9: investigation No. P2100352. Myers emailed this request on January 26, 2021. The city provided Myers the incident-report form and

the initial narrative on the same day but withheld the supplement narratives.  The city subsequently provided Myers the incident-report form and the initial narrative but withheld the supplement narratives.

{¶ 27} The following chart summarizes the foregoing information:

| Request No. | Investigation No. | Public-Records Request (date) | Incident-Report Form and Initial Narrative (date disclosed) | Supplement Narratives (date disclosed) |
|---|---|---|---|---|
| 1 | P2015185 | 11/20/20 | 1/8/21 | |
| 2 | 18-019929 | 12/6/20 | 2/18/21 | |
| 3 | P2015431 | 12/8/20 | 2/18/21 | |
| 4 | P2015437 | 12/8/20 | 2/18/21 | 2/18/21 |
| 5 | P2015499 | 12/10/20 | 2/18/21 | |
| 6 | P2015606 | 12/15/20 | 2/18/21 | 2/18/21 |
| 7 | P2100231 | 1/18/21 | 1/19/21 | 2/18/21 |
| 8 | P2100318 | 1/22/21 | 1/22/21 | 2/18/21 |
| 9 | P2100352 | 1/26/21 | 1/26/21 | |

{¶ 28} In sum, with respect to request Nos. 4, 6, 7, and 8, the city has made full disclosure of the records because those investigations are complete.  Thus, Myers's writ claim is moot with respect to request Nos. 4, 6, 7, and 8.  As for request Nos. 1, 2, 3, 5, and 9, the city has disclosed the incident-report forms and the initial narratives but withheld the supplement narratives.  And finally, in request Nos. 1 through 6, the city failed to promptly disclose the incident-report forms.

## II. LEGAL ANALYSIS

### A. Burden of proof

{¶ 29} A person who is denied access to a public record may seek to compel its production through a mandamus action. R.C. 149.43(C)(1)(b). In such a case, the requester must prove a clear legal right to the requested records and a corresponding clear legal duty on the part of the custodian to provide them, *State ex rel. Penland v. Ohio Dept. of Rehab. & Corr.*, 158 Ohio St.3d 15, 2019-Ohio-4130, 139 N.E.3d 862, ¶ 9, by clear and convincing evidence, *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 16.

{¶ 30} Because the city invokes the CLEIR exception to disclosure here, it bears the burden of production "to plead and prove facts clearly establishing the applicability of the [exception]." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 27. And because "[e]xceptions to disclosure under * * * R.C. 149.43 are strictly construed against the public-records custodian," the custodian does not satisfy its burden "if it has not proven that the requested records fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus.

### B. Public-record incident reports must be distinguished from "specific investigatory work product"

{¶ 31} R.C. 149.43(A)(1) defines a public record as a "record[] kept by any public office, including but not limited to, state, county, city, village, [and] township." R.C. 149.43(A)(1)(h) excepts CLEIRs from the public-records definition. R.C. 149.43(A)(2) defines a CLEIR as "any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high

probability of disclosure of" one of four categories listed in R.C. 149.43(A)(2)(a) through (d).

{¶ 32} At issue here is the city's claim of confidentiality under R.C. 149.43(A)(2)(c), one provision of which excepts from disclosure "specific investigatory work product." Notably, unlike other categories of a CLEIR, the exception for "specific investigatory work product" expires at the end of a criminal trial, *State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 47, or when an investigation has been closed, *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 41-42. *See also State ex rel. Police Officers for Equal Rights v. Lashutka*, 72 Ohio St.3d 185, 188, 648 N.E.2d 808 (1995) (the investigatory-work-product exception "applies to actual pending or highly probable criminal prosecutions" [emphasis deleted]).

{¶ 33} We have consistently held that routine "offense-and-incident reports" do not fall under the exception for "specific investigatory work product," and are therefore public records. *See State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), paragraph five of the syllabus (investigatory-work-product exception "does not include ongoing routine offense and incident reports," which "are subject to immediate release upon request"),[1] *overruled on other grounds by Caster*; *see also State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 13 (routine offense-and-incident reports, which are "form reports in which the law enforcement officer completing the form enters information in the spaces provided," are "not exempt work product and are normally subject to immediate release upon request").

---

1. Myers argues that we should narrow the definition of police-officer work product to include only "opinion work product" rather than adhere to the broader *Steckman* standard, which encompasses "fact work product." *See Caster* at ¶ 63-65 (O'Connor, C.J., concurring in part and dissenting in part). We decline to do so. In *Caster*, this court adhered to the broader standard, *id*. at ¶ 19, and we see no compelling reason to revisit that issue in this case.

### C. Analysis of Myers's writ claim

**{¶ 34}** As discussed, the gravamen of Myers's claim for a writ of mandamus lies in his argument that the supplement narratives constitute part of the public-record incident report. The city's defense is that the supplement narratives constitute "specific investigatory work product" under R.C. 149.43(A)(2)(c); in the city's view, the public-record incident report encompasses the incident-report form and the initial narrative but does not extend to the supplement narratives.

**{¶ 35}** In support of his writ claim, Myers advances an argument that has a broader version and a narrower version. Under the broader version, all the supplement narratives are part of the public-record incident report. Under the narrower version, only some of the supplement narratives are part of the public-record incident report.

#### *1. Whether all the supplement narratives are public records*

**{¶ 36}** Myers first argues that all the supplement narratives are part of the public-record incident reports because they are "included in the very same document" as the incident-report form. As factual support, Myers refers to the police chief's affidavit, which characterizes the incident-report form, initial narrative, and supplement narratives as parts of an overarching "investigatory record."

**{¶ 37}** In support of his position, Myers cites our decision in *State ex rel. Beacon Journal Publishing Co. v. Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511 (2001). *Maurer* addressed a media representative's request for an unredacted copy of an Ohio Uniform Incident Report:

> In the space apparently to be used to describe the events, the deputy wrote "taped narrative" and attached to the incident report four typed transcripts of taped statements by law enforcement officers. These typed narrative statements were titled "Wayne County

11

Sheriff's Office Narrative/Supplementary Report." Written statements by other witnesses were also attached to the report. The incident report form total[ed] two pages in length; the typed narrative statements and witnesses' statements total[ed] thirty-five pages.

*Id*. at 54. This court held that the incident report and the narratives had to be disclosed because the officer who had completed the report "incorporated the typed narrative statements by reference in the incident report"; as a result, he "incorporated them in a public record." *Id*. at 57. " 'Once clothed with the public records cloak, the records cannot be defrocked of their [public-record] status.' " *Id*., quoting *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 378, 662 N.E.2d 334 (1996).

{¶ 38} Myers reasons that if "documents merely 'referenced' " in the incident-report form are "by virtue of that reference, incorporated into that Report, then a fortiori narratives that are themselves part of the very same document are part of the Report as well."

{¶ 39} We reject Myers's contention that *all* supplement narratives are part of the public-record incident report. Contrary to Myers's argument, the police chief's affidavit does not answer the question before us, it merely poses it. The police chief regards certain documents as the public-record incident report but not the supplement narratives. Whether the supplement narratives are public records does not, however, depend on the police chief's viewing them as part of a larger investigatory record that includes the incident-report forms. Instead, the public-record status of the supplement narratives depends on the standards we have developed in the case law.

{¶ 40} Our case law provides two bases for determining whether documents qualify as part of the public-record incident report. The first is whether the

document constitutes a regular incident-report form on which officers have filled in blanks with information. *See Lanham*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 13. The second is whether the information provided initiates the investigation, *Maurer*, 91 Ohio St.3d at 56-57, 741 N.E.2d 511, as opposed to constituting work product generated after the investigation is under way.

**{¶ 41}** To demonstrate the application of these criteria, consider Myers's request No. 4, investigation No. P2015437, in which the city has disclosed the supplement narratives because the investigation is complete. In investigation No. P2015437, the incident-report form was generated on December 5, 2020, at 8:03 p.m., and the first supplement narrative was authored at 10:29 p.m. Six supplement narratives followed, three of which were created on December 7, one on December 9, one on December 13, and the final supplement narrative is dated January 25, 2021. Those later supplement narratives, which were generated days after the date and time of the incident-report form, are not part of the public-record incident report because they neither contain information included in the incident-report form nor do they supply information that initiated the investigation. As a result, because the later supplement narratives are not part of the public-record incident report, they may qualify as work product of the investigation that was initiated by the public-record incident report.[2] We therefore reject the broad version of Myers' argument.

*2. Some supplement narratives are public records*

**{¶ 42}** Alternatively, Myers advances a narrower version of his argument by asserting that some, but not all, of the supplement narratives are public records. He contends that some of the supplement narratives that have already been

---

2. Myers also argues that because some of the incident-report forms "directly reference their corresponding Supplement Narratives," the content from those supplement narratives are incorporated into the public-record incident report by reference. While there is a place for "names mentioned in narratives" in the incident-report form and the word "supplement" appears next to the names of certain witnesses, the references to "supplement" in the incident-report forms merely serve to identify the names that are mentioned in the supplement narratives; they do not incorporate witness statements into the incident-report forms.

produced "contain narrative derived directly from the party reporting the facts of the at-issue offense or incident to the Department." Myers surmises that the same may be true of the documents that the city has submitted for in camera review.

{¶ 43} We conclude that this narrower version of Myers's argument is correct. In addressing this point, it is useful to consider an example. In request No. 4, investigation No. P2015437, the city disclosed the supplement narratives because the investigation was completed. The date of the incident was December 5, 2020, and time of the incident was 8:03 p.m. The time on the initial narrative was 9:58 p.m. on the same date. The first supplement narrative was created at 10:29 p.m. on that date, approximately 30 minutes after the initial narrative. That first supplement narrative contains the responding officer's observations and witness statements. There are six supplement narratives on later dates, with the last one concluding the investigation on January 25, 2021.

{¶ 44} A review of the supplement narratives in investigation No. P2015437 establishes that the first supplement narrative is contemporaneous with the police response to the incident and contains information that the responding officer obtained at the scene. Because the timing and nature of the content shows that the information initiates the investigation, the first supplement narrative consists of what we will call "incident information" that properly constitutes part of the public-record incident report, even though the officer elected to label that information as a "supplement" narrative rather than an "initial" narrative.

{¶ 45} We hold that when a police department maintains both incident-report forms and investigatory work product as part of the same overall investigatory record, officers' reports that contain their observations at the time that they are responding to an incident, along with initial witness statements taken at the time of the incident or immediately thereafter, are incident-report information that is a public record and may not be withheld from disclosure as "specific investigatory work product" under R.C. 149.43(A)(2)(c). To use the terminology

of this opinion, supplement narratives that contain incident information are part of the public-record incident report, even though officers have neither included that information on the incident-report form nor incorporated it into the "initial narrative."

{¶ 46} We emphasize, however, that our analysis in this case does not foreclose redacting information that is part of the public-record incident report if that information qualifies for nondisclosure under a public-records exception other than "specific investigatory work product," including a different CLEIR provision. Even the information that is included in an incident-report form may, in a proper case, be redacted under a public-records exception other than the specific-investigatory-work-product exception in R.C. 149.43(A)(2)(c). *See State ex rel. Shaughnessy v. Cleveland*, 149 Ohio St.3d 612, 2016-Ohio-8447, 76 N.E.3d 1171, ¶ 12 ("we have stated that police incident reports are subject to redactions to prevent the disclosure of exempt information"), citing *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 55 ("although police offense-and-incident reports are generally subject to disclosure, documents containing information that is exempt under state or federal law may be redacted"), *superseded by statute on other grounds as stated in State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136. In the cases before us, however, the city does not advance any exception from public-records disclosure of the supplement narratives other than the specific-investigatory-work-product exception. Under our holding, to the extent that supplement narratives contain incident information, they do not constitute specific investigatory work product and must be disclosed if no other public-records exception justifies withholding them.

*3. Determining which supplement narratives are part of the public-record incident report*

{¶ 47} The next issue that must be resolved is a factual matter: which supplement narratives contain incident information and are therefore public records. Here, the most important factor is timing—the initial observations by officers and the initial witness statements taken at the physical location close to the time that the incident occurred constitute incident information that may not be regarded as specific investigatory work product, even when the information has not been incorporated into the incident-report form.

{¶ 48} We now review each of the investigations in which the city has submitted records for in camera review in order to identify which supplement narratives contain incident information that makes them subject to disclosure as part of the public-record incident report.

### a. Case No. 2020-1469

{¶ 49} Request No. 1: investigation No. P2015185. Myers requested this record on November 20, 2020. The date and time on this incident report are November 19, 2020, at 9:31 a.m. The initial narrative is dated November 19, 2020, at 10:23 a.m. and states, "Detective opened an investigation into a possible sexual assault. Investigation continues." The first supplement narrative, dated November 19 at 10:25 a.m., contains an account of the officer's interview of the victim. There are additional supplement narratives on later dates. The city shall disclose the first supplement narrative that is dated November 19, 2020, because it contains incident information. The remaining supplement narratives are not subject to the writ.

### b. Case No. 2021-211

{¶ 50} Request No. 2: investigation No. 18-019929. Myers requested this record on December 6, 2020. The date and time on this incident report are August 28, 2018, at 9:15 a.m. The initial narrative, dated August 28, 2018, at 9:35 a.m., states, "Detective opened an investigation into a reported sexual assault.

Investigation ongoing." The first supplement narrative, dated April 18, 2020, at 5:31 p.m., recites the background of the investigation and investigative activity. There are additional supplement narratives on later dates. None of these supplement narratives need be disclosed because they do not contain incident information.

{¶ 51} Request No. 3: investigation No. P2015431. Myers requested this record on December 8, 2020. The date and time on this incident report are December 5, 2020, at 10:41 a.m. The initial narrative, dated December 5, 2020, at 2:22 p.m., states, "Dispatched on a possible deceased female." The first supplement narrative, dated December 5, 2020, at 2:24 p.m., describes the officer's impressions at the scene and initial witness statements. There is an additional supplement narrative on a later date. The city shall disclose the December 5 supplement narrative because it contains incident information.

{¶ 52} Request No. 5: investigation No. P2015499. Myers requested this record on December 10, 2020. The date and time on this incident report are December 9, 2020, at 6:33 a.m. The initial narrative, dated December 9, 2020, at 7:36 a.m., states, "Investigation." The first supplement narrative, dated December 9 at 8:10 a.m., describes the officer's response to the incident, the officer's impressions of the crime scene, and initial witness statements. A second supplement narrative is dated December 9 at 8:11 a.m. It is written by a different officer and describes how that officer assisted at the scene of the incident. There are additional supplement narratives on later dates. The city shall disclose the first and second supplement narratives, dated December 9, because they contain incident information. The remaining supplement narratives are not subject to the writ.

{¶ 53} Request No. 9: investigation No. P2100352. Myers requested this record on January 26, 2021. The date and time on this incident report are January 23, 2021, at 8:35 p.m. The initial narrative, dated January 23, 2021, at 11:51 p.m., states, "Report taken." The first supplement narrative, dated January 23, 2021, at

11:51 p.m., describes the officer's impressions at the scene, presents initial witness statements, and specifies further actions by the officer. There are additional supplement narratives on later dates. The city shall disclose the January 23 supplement narrative because it contains incident information. The remaining supplement narratives are not subject to the writ.

{¶ 54} In light of the foregoing discussion of the records submitted for in camera review, we issue a writ of mandamus requiring the city to disclose those supplement narratives that we have identified as containing incident information.

### D. Statutory damages

{¶ 55} Under R.C. 149.43(C)(2), a "requester shall be entitled to recover" statutory damages when (1) he submits a written public-records request "by hand delivery, electronic submission, or certified mail," (2) the request "fairly describes the public record or class of public records to the public office or person responsible for the requested public records," and (3) "a court determines that the public office or the person responsible for public records failed to comply with an obligation" imposed by R.C. 149.43(B). Statutory damages accrue at $100 "for each business day during which the public office or person responsible for the requested public records failed to comply" with R.C. 149.43(B), "beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars." *Id.*

{¶ 56} Myers submitted his public-records requests by email, which triggers R.C. 149.43(C)(2). Myers advances four types of statutory-damage claims:

1. Damages for the city's failure to promptly disclose incident-report forms;

2. Damages for the city's failure to promptly disclose supplement narratives that are public records because they contain incident information (i.e., the supplement narratives that are subject to the writ in these cases);

18

3.  Damages for the city's failure to promptly disclose supplement narratives that were originally investigatory work product in those investigations that have been completed; and

4.  Damages for the city's failure to promptly provide a reasoned denial of Myers' requests including citation to legal authority.

{¶ 57} In connection with considering each specific claim, three general questions arise: (1) whether Myers's request for nine incident reports should be treated as distinct records requests for purposes of assessing statutory damages, (2) whether we should assess separate damage awards for the city's violations of R.C. 149.43(B) if those violations relate to one records request, and (3) whether damages that would otherwise accrue should be abated on the ground that the city acted reasonably (though unlawfully) in withholding certain records.

### 1. *Precedent prohibits "stacking" damages but permits multiple awards of damages with respect to distinct records requests*

{¶ 58} This court has held that R.C. 149.43(C)(2) " 'does not permit stacking of multiple damage awards based on what is essentially the same records request.' " *State ex rel. Ware v. Akron*, 164 Ohio St.3d 557, 2021-Ohio-624, 174 N.E.3d 724, ¶ 22, quoting *State ex rel. Dehler v. Kelly*, 127 Ohio St.3d 309, 2010-Ohio-5724, 939 N.E.2d 828, ¶ 4. A requester who has made one public-records request may typically recover only $100 for each business day that a public office fails to comply with its obligation, even when the requester identifies multiple violations of R.C. 149.43(B) for a particular business day. *See State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 565, 2015-Ohio-4914, 45 N.E.3d 981, ¶ 28-29. And R.C. 149.43(C)(2) imposes a $1,000 cap on the damages that a requester may recover for a records request.

{¶ 59} Since the requester is entitled to one damage award for each public-records request, we must determine what constitutes a single request. The city argues in its merit brief that "all nine of Relator's requests" amount to "essentially

the same records request." We disagree. Each of Myers's requests relates to a separate public-record incident report, and—with one exception that is noted below—each request was made in a separate email on a different date. *Compare Ware* at ¶ 22 (two letters that were included in one certified-mailed envelope, both of which requested police-department personnel information, were treated as a single records request for purposes of calculating statutory damages). The antistacking principle does not prohibit multiple statutory-damage awards when violations occur in connection with different records requests.

*2. Myers is entitled to statutory damages for the city's failure to promptly disclose incident-report forms*

**{¶ 60}** As already discussed above, with respect to six of Myers's nine records requests, the city failed to make the incident-report forms available *promptly*, as required by R.C. 149.43(B)(1). Instead of producing the incident-report forms themselves, the city initially relied on Kinzer's daily media report to provide Myers with the information that was contained in the incident reports. But a records request is a request not for information but for an existing record. *See State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 30. Once the record has been requested, R.C. 149.43(B) requires that the public office "promptly" make it available to the requester.

**{¶ 61}** Although these violations trigger R.C. 149.43(C)(2), the statutory-damage provision, it is appropriate to consider whether to abate damages under R.C. 149.43(C)(2)(a) and (b). Those provisions authorize us to reduce or not to award statutory damages if we find (1) that "a well-informed public office * * * reasonably would believe that the conduct * * * that allegedly constitutes a failure to comply with an obligation" imposed by R.C. 149.43(B) did not constitute such a failure "based on the ordinary application of statutory law and case law as it existed at the time of the conduct," R.C. 149.43(C)(2)(a), and (2) that "a well-informed public office * * * reasonably would believe that [its] conduct * * *

would serve the public policy that underlies the authority that is asserted as permitting that conduct," R.C. 149.43(C)(2)(b).

{¶ 62} The city's failure to promptly disclose incident-report forms does not satisfy either of these criteria. In *Steckman*, 70 Ohio St.3d 420, 639 N.E.2d 83, and in later cases, we stated that incident reports constitute public records and do not constitute confidential work product. Here, the city did not misunderstand Myers's request; instead, it misunderstood its clearly established duties under R.C. 149.43. Accordingly, the city violated its statutory obligation under R.C. 149.43(B)(1) to promptly provide the incident-report forms to Myers, and Myers is entitled to statutory damages.

{¶ 63} We must now compute the amount of statutory damages to which Myers is entitled. In case No. 2020-1469, the incident-report form was not disclosed until more than ten days after Myers filed the complaint for a writ of mandamus—the complaint was filed in this court on December 4, 2020, and the incident report was not produced until January 8, 2021. Accordingly, Myers is entitled to an award of $1,000 in statutory damages for the city's violation of its prompt-disclosure requirement in case No. 2020-1469.

{¶ 64} In case No. 2021-0211, with respect to five of the eight incident-report forms that Myers requested, the city did not disclose the incident-report forms until two days after Myers filed the complaint for a writ of mandamus—the complaint was filed in this court on February 16, 2021, and the incident-report forms were provided on February 18, 2021, two business days later. Importantly, however, two of the public-record incident reports were sought in the same email.[3]

---

3. The award of statutory damages for the untimely disclosure of the incident-report forms in case No. 2021-0211 pertains to request Nos. 2 through 6 (investigation Nos. 18-019929, P2015431, P2015437, P2015499, and P2015606). Request Nos. 3 and 4 (investigation Nos. P2015431 and P2015437) were included in the same email that Myers sent on December 8, 2020. We will treat that email as a single records request for purposes of statutory damages.

Because of the antistacking principle, Myers is limited to one award of statutory damages for that single email request.

{¶ 65} To compute the amount of damages, we assess $100 "for each business day" of the city's noncompliance "beginning with the day on which [Myers] file[ed] [the] mandamus action." *See* R.C. 149.43(C)(2). Myers is entitled to $200 for two days—the day on which he filed the complaint in case No. 2021-0211 and the following day—multiplied by the four separate requests in which incident-report forms were not promptly produced—a total of $800 damages. We therefore award Myers $800 for the city's failure to promptly disclose a total of five incident report-forms for four separate public-records requests. Adding this amount to the $1,000 we awarded Myers in case No. 2020-1469, we arrive at a total damages award of $1,800.

3. *Statutory damages relating to the city's delayed disclosure of those supplement narratives that contain the incident information will be abated*

{¶ 66} Myers also seeks statutory damages for the city's delay in disclosing the supplement narratives that contain incident information that makes them part of the public-record incident report—in other words, the supplement narratives that are required to be disclosed by the writ that we are issuing. By extension, this claim could encompass the delay in disclosing supplement narratives that contain incident information with respect to the four investigations in which the city has already disclosed all the supplement narratives.[4]

{¶ 67} If we determine that we should abate the claim for statutory damages under R.C. 149.43(C)(2)(a) and (b), however, the amount of the damages is moot. In the context of the city's failure to disclose the supplement narratives that are subject to the writ, we find that the city behaved reasonably under R.C. 149.43(C)(2)(a) and (b). First, under R.C. 149.43(C)(2)(a), the city could

_____

4. This aspect of Myers's argument involves request Nos. 4, 6, 7, and 8 (investigation Nos. P2015437, P2015606, P2100231, and P2100318).

reasonably have believed that it was proper to withhold the supplement narratives to protect the fruits of its investigation from disclosure, and the reasonableness of this position receives support from our decision to deny the writ with respect to most of the supplement narratives. Second, under R.C. 149.43(C)(2)(b), the city could also have reasonably believed that withholding the information that is contained in the supplement narratives served the public policy of keeping the city's investigatory work product confidential. Accordingly, we will abate the statutory damages that are associated with the city's failure to disclose the supplement narratives that contain incident information.

*4. Myers has not shown that he is entitled to statutory damages for the city's delayed disclosure of the investigatory work product in the completed investigations*

{¶ 68} The next claim for statutory damages concerns request Nos. 4, 6, 7, and 8 (investigation Nos. P2015437, P2015606, P2100231, and P2100318), in which the city has disclosed all the supplement narratives on the ground that the investigations have been completed and closed—in other words, the disclosure includes those supplement narratives that qualified as investigatory work product while the investigations were still ongoing. Here, Myers contends that the city did not *promptly* disclose the public-record investigatory reports. Because two business days elapsed, beginning with the date on which Myers filed the complaint in case No. 2021-0211 before full disclosure, Myers seeks $800 in statutory damages.

{¶ 69} We have already determined that in case No. 2021-0211, Myers is entitled to $200 in statutory damages for the city's failure to promptly disclose the incident-report forms, and that determination includes two requests we are now considering: request Nos. 4 and 6 (investigation Nos. P2015437 and P2015606). The antistacking principle would bar any further award of statutory damages for those requests. That leaves request Nos. 7 and 8 (investigation Nos. P2100231 and

P2100318). Myers's claim for statutory damages in this context would amount to an additional $400 ($100 for the day on which Myers filed the complaint and the day thereafter, multiplied by two).

{¶ 70} Because the status of these particular supplement narratives depends on whether and when the investigations were complete, Myers has the burden to show that disclosure was not made promptly after completion of the investigation. We conclude that Myers has not met that burden. With respect to investigation No. P2100231, the final supplement narrative is dated January 15, 2021, and it ends by stating: "Investigation continues." By contrast, in investigation No. P2100318, the final supplement narrative is dated February 10, 2021, and states: "Case closed." Myers filed the complaint in case No. 2021-0211 on February 16, and the investigatory record in each of those two matters was produced two days later.

{¶ 71} This evidence does not show that the city unreasonably delayed the disclosure of the supplement narratives. In P2100231, at the time Myers made his request on January 18, 2021, the final supplement narrative stated the investigation was continuing; as a result, the city needed to make a subsequent determination as to whether the investigation had been completed. The city both determined that the investigation was complete and produced the full record within the month after Myers made the request. In P2100318, the delay in producing the full record after the case had been closed was a week and a day. Myers has not shown the delay to be unreasonable in either situation.

5. *Myers is not entitled to damages relating to the city's failure to promptly cite authority in support of its denial of Myers's request for supplement narratives*

{¶ 72} Myers also claims damages because of the city's delay in providing the statutory basis for withholding the requested supplement narratives. R.C. 149.43(B)(3) requires that a written denial to a written public-records request "provide the requester with an explanation, including legal authority, setting forth why the request was denied." In case No. 2020-1469, the city provided a denial

with a citation to a statute on December 11, 2020, seven days after Myers filed the complaint. However, the city did not provide a denial with a statutory citation with respect to any of the other requests until after the mandamus action was filed. Myers seeks statutory damages for the city's delay in providing a denial that is compliant with R.C. 149.43(B)(3).

{¶ 73} We deny this portion of Myers's damages claim for two reasons. First, R.C. 149.43(B)(3)—unlike R.C. 149.43(B)(1)—does not contain a requirement that the denial be "prompt." *See State ex rel. Ware v. Giavasis*, 160 Ohio St.3d 383, 2020-Ohio-3700, 157 N.E.3d 710, ¶ 12. As a result, the city's delay in providing Myers with an explanation for its denial does not by itself entitle Myers to an award of statutory damages. Second, although the city did not provide a formal explanation with respect to each of his records requests, the email exchanges between Myers and the police chief in case No. 2020-1469 furnished Myers with a general explanation of the city's position. Accordingly, we deny statutory damages based on the city's delay in explaining its denial of Myers's requests for the supplement narratives.

### E. Attorney fees

{¶ 74} We may award attorney fees when we order a public office to comply with R.C. 149.43(B). R.C. 149.43(C)(3)(b) "outlines four different triggering events that grant a court discretion to order reasonable attorney fees in a public-records case." *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 32. Myers seeks attorney fees under R.C. 149.43(C)(3)(b).

{¶ 75} However, R.C. 149.43(C)(3)(c) states that attorney fees should not be awarded when a court determines that the public office "reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records did not constitute a failure to comply with an obligation in accordance with" R.C. 149.43(B) and that the public office

"reasonably would believe that the conduct or threatened conduct of the public office or person responsible for the requested public records would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct."

{¶ 76} We have already made a similar determination in connection with abating statutory damages associated with the city's failure to disclose supplement narratives that contain incident information. Using that same logic, we conclude that awarding attorney fees is inappropriate here because the city could have reasonably believed that it could withhold the supplement narratives and that doing so would fulfill the public policy behind the investigatory-work-product exception. Indeed, Myers does not cite any legal authority in which supplementary parts of an investigatory record have been held to be public records. *See State ex rel. Summers v. Fox*, 164 Ohio St.3d 583, 2021-Ohio-2061, 174 N.E.3d 747, ¶ 14. We deny Myers's request for an award of attorney fees.

## F. Costs

{¶ 77} Myers also requests an award of court costs. R.C. 149.43(C)(3)(a)(i) states: "If the court orders the public office or the person responsible for the public record to comply with [R.C. 149.43(B)], the court shall determine and award to the relator all court costs." Because we are granting a partial writ of mandamus, we award court costs to Myers.

## III. CONCLUSION

{¶ 78} For the foregoing reasons, we grant Myers a partial writ of mandamus requiring the city to disclose some, but not all, of the supplement narratives at issue. Stated generally, the city must disclose those supplement narratives that we have previously found to contain incident information—but the city need not disclose any other supplement narratives. More specifically, the city must disclose: (1) the first supplement narrative for investigation No. P2015185, dated November 19, 2020, at 10:25 a.m., (2) the first supplement narrative for

investigation No. P2015431, dated December 5, 2020, at 2:24 p.m., (3) the first and second supplement narratives for investigation No. P2015499, dated December 9, 2020, at 8:10 a.m. and 8:11 a.m., and (4) the first supplement narrative for investigation No. P2100352, dated January 23, 2021, at 11:51 p.m. We are not ordering the city to disclose any of the supplement narratives for investigation No. 18-019929. We also award Myers statutory damages in the amount of $1,800. We award costs to Myers, but we deny his request for an award of attorney fees.

Judgment accordingly.

O'CONNOR, C.J., and DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by DEWINE, J.

FISCHER, J., concurs in the court's judgment granting a partial writ but dissents from the court's judgment as to the award of damages and costs.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 79} Today, the majority modifies the definition of what "specific investigatory work product" is under R.C. 149.43(A)(2)(c). By doing so, it needlessly complicates a standard that was settled almost 30 years ago in *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994). In *Steckman*, this court held that "information assembled by law enforcement officials in connection with a probable or pending criminal proceeding" is "specific investigatory work product" and is therefore exempt from disclosure. *Id*. at paragraph five of the syllabus, *overruled on other grounds by State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598. The majority's change to *Steckman*'s definition to include *when* a report is created and *how* a police department maintains the record will certainly cause confusion and spur litigation for years to come.

**{¶ 80}** I agree with the majority's decision to grant an award of $1,800 in statutory damages to relator, Derek J. Myers, because respondents, the city of Chillicothe; its police chief, Ron Meyers ("police chief"); and the police department's records clerk, Mica Kinzer (collectively, "the city"), failed to timely produce routine incident-report forms. Although I also agree with the majority's decision to deny Myers statutory damages for the city's failure to produce various supplement reports, I disagree with the majority's reasoning.

**{¶ 81}** I also disagree with the majority's holding that the time at which a law-enforcement officer creates a record or that a police department's method for maintaining such records determines whether the confidential-law-enforcement-investigatory-record exemption ("specific investigatory work product"), R.C. 149.43(A)(2)(c), applies.

**{¶ 82}** Because the records that the city withheld from disclosure meet the *Steckman* definition of "specific investigatory work product," I would deny Myers a writ of mandamus. Because the majority does otherwise, I dissent.

**{¶ 83}** Therefore, I concur in part and dissent in part.

**Mandamus and R.C. 149.43, Ohio's Public Records Act**

**{¶ 84}** Mandamus is an appropriate remedy by which to compel a public office's compliance with the Public Records Act. R.C. 149.43(C)(1)(b); *see State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6. The requester must establish by clear and convincing evidence a clear legal right to the requested records and a corresponding clear legal duty on the part of the public office to provide them. *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10.

**{¶ 85}** "Exceptions to disclosure under the Public Records Act are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *State ex rel. Miller v. Ohio State Hwy.*

*Patrol*, 136 Ohio St. 3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 23. To meet this burden, the records custodian must prove that the requested records "fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus.

**"Specific investigatory work product" exception**
**to the Public Records Act**

**{¶ 86}** A public record is any record kept by a public office. R.C. 149.43(A)(1). Despite that overarching definition of a public record, the legislature has exempted certain records from disclosure.

**{¶ 87}** A confidential law-enforcement investigatory record is exempt from disclosure when the record "pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent the release of the record would create a high probability of disclosure" of one of four categories of records. R.C. 149.43(A)(2). In this case, the city argues that the requested records are exempt as specific investigatory work product under R.C. 149.43(A)(2)(c).

**{¶ 88}** In *Steckman*, 70 Ohio St.3d 420, 639 N.E.2d 83, this court stepped back from its earlier decisions in *State ex rel. Beacon Journal Publishing Co. v. Univ. of Akron*, 64 Ohio St.2d 392, 415 N.E.2d 310 (1980), and *State ex rel. Natl. Broadcasting Co. v. Cleveland*, 38 Ohio St.3d 79, 526 N.E.2d 786 (1988), regarding what material could be classified as specific investigatory work product and therefore exempt under R.C. 149.43(A)(2)(c). In *Steckman*, this court concluded that it had not addressed what the phrase "specific investigatory work product" meant in *Beacon Journal Publishing Co*. *Steckman* at 433. In *Beacon Journal Publishing Co.*, this court held that the R.C. 149.43(A)(2)(c) exemption did not apply because the reports at issue were "routine *factual* reports." (Emphasis added). *Id.* at 397.

**{¶ 89}** In *Steckman*, this court also cast doubt on the reliability of the holding in *Natl. Broadcasting Co.* This court explained in *Steckman* that the definition of specific investigatory work product in *Natl. Broadcasting Co.* as " 'an investigator's deliberative and subjective analysis, his interpretation of the facts, and his theory of the case, and investigative plans,' " *Steckman* at 434, quoting *Natl. Broadcasting Co.* at paragraph three of the syllabus, was based on a "nonexistent foundation," *Steckman* at 433.

**{¶ 90}** In *Steckman*, this court concluded that it had not yet addressed what constituted "work product" for purposes of the specific-investigatory-work-product exemption under R.C. 149.43(A)(2)(c). Recognizing this court's failure to define that phrase in past decisions, this court focused on the text of R.C. 149.43(A)(2)(c). This court considered the United States Supreme Court's definition of "work product" in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and the definition of the "work product rule" in *Black's Law Dictionary* 1606 (6th Ed.Rev.1990). *Steckman* at 434. This court held that "information assembled by law enforcement officials in connection with a probable or pending criminal proceeding is, by the work product exception found in R.C. 149.43(A)(2)(c), excepted from required release." *Id.* at paragraph five of the syllabus. This court also held that "[r]outine offense and incident reports are subject to immediate release upon request." *Id.*

**{¶ 91}** After *Steckman*, we reiterated that its holding applies "to actual pending or highly probable *criminal* prosecutions and defines, in *that* context, the very narrow exceptions to R.C. 149.43." (Emphasis sic.) *State ex rel. Police Officers for Equal Rights v. Lashutka*, 72 Ohio St.3d 185, 188, 648 N.E.2d 808 (1995).

**{¶ 92}** In holding that the specific-investigatory-work-product exemption applied in *State ex rel. Leonard v. White*, 75 Ohio St.3d 516, 518, 664 N.E.2d 527 (1996), this court explained that "[o]nce it is *evident that a crime has occurred*,

30

investigative materials developed are necessarily compiled in anticipation of litigation and so fall squarely within the *Steckman* definition of [specific investigatory] work product." (Emphasis added).

### The supplement narratives are specific investigatory work product and are therefore exempt from disclosure

{¶ 93} Myers made nine public-records requests seeking incident-report forms and supplement narratives. The incident-report forms are not in dispute. The dispute before us centers on the supplement narratives. The city provided supplement narratives for request Nos. 4, 6, 7 and 8 after the investigations associated with those requests were closed. So, the issue here is whether the specific-investigatory-work-product exemption applies to the supplement narratives connected to Myers's request Nos. 1, 2, 3, 5, and 9. In the requests at issue, the term "supplement narrative" refers to the additional narratives that are prepared by police officers as part of an investigatory record. For purposes of consistency, this opinion adopts the same terminology as the majority:

> "[T]he standard, fill-in-the-blank information," we will call "the incident-report form." As for the two types of narratives, we will follow the police chief's terminology and call them the "initial narrative" and the "supplement narratives." Finally, we will use the phrase "public-record incident report" to refer to those documents that must be disclosed under the Public Records Act.

Majority opinion, ¶ 8.

{¶ 94} As explained in the police chief's affidavit, supplement narratives "contain the personal notes of the investigating officer regarding the incident, summarizing witness and victim interviews, and evaluating the alleged offense,"

along with "specific details of the crime alleged, the identities of the victim, witnesses, and alleged perpetrator, and other related information."

{¶ 95} The majority holds that various supplement narratives do not fall under the specific-investigatory-work-product exemption. I disagree. Because the records sought in request Nos. 1, 2, 3, 5, and 9 fall squarely within the *Steckman* definition of specific investigatory work product, Myers is not entitled to a writ of mandamus.

{¶ 96} Request No. 1 asks for the public-record incident report from investigation No. P2015185. The incident-report form states that the rape of a child was reported on November 19, 2020, at 9:31 a.m. A detective met with the victim at 10:23 a.m. The initial narrative, which is dated November 19, 2020, at 10:23 a.m., states: "Detective opened an investigation into a possible sexual assault. Investigation continues." The first supplement narrative was completed just two minutes after the initial narrative. It states that the detective met with the victim who wanted to discuss incidents that had occurred in 2007. The victim described the sex acts that the accused had reportedly forced on the victim.

{¶ 97} Request No. 2 asks for the public-record incident report for investigation No. 18-019929. The majority grants Myers an award of statutory damages only for the city's failure to disclose the incident-report form. I agree with that determination. The allegation in the incident-report form is gross sexual imposition. The initial narrative is dated August 28, 2018. It states: "Detective opened an investigation into a reported sexual assault. Investigation ongoing." There is no supplement narrative until April 18, 2020, and the investigation was ongoing.

{¶ 98} Request No. 3 asks for the public-record incident report for investigation No. P2015431. The incident-report form lists a suspicious death of a 27-year-old woman, reported on December 5, 2020, at 10:41 a.m. The investigating officer reported being at the scene at approximately 10:45 a.m. The initial narrative

is dated December 5, 2020, at 2:22 p.m., and states: "Dispatched on a possible deceased female." The first supplement narrative, which was written by that same officer, was created two minutes later and contained his observations. It states that the investigating officer arrived at the same time as the medics and that he had spoken to the decedent's parents. The officer waited for the coroner to arrive and then turned the investigation over to a detective.

{¶ 99} Request No. 5 asks for the public-record incident report for investigation No. P2015499. The incident-report form lists the possible crime as a shooting and states that an aggravated assault and an aggravated burglary may have occurred. The initial narrative is dated September 9, 2020, at 7:36 a.m., and states: "Investigation." The first supplement narrative is dated that same day at 8:10 a.m. The responding officer wrote that there was a victim who had been shot in a home. The officer found the victim, who was in an upstairs bedroom. The reporting witness described a break-in and the shooting.

{¶ 100} Request No. 9 asks for the public-record incident report for investigation No. P2100352. The incident-report form identifies the crime as gross sexual imposition. The initial narrative is dated January 23, 2021, at 11:51 p.m., and states: "Report taken." The first supplement narrative was reported at the same time. It states that the responding officer was dispatched to investigate a possible rape. The officer spoke to the victim's mother, who reported that her child had been raped. The name of the child victim and additional details are given in the first supplement narrative.

{¶ 101} An in camera review of the first supplement narratives in request Nos. 1, 2, 3, 5, and 9 reveals that those records were created after it was evident to the responding officers that a crime had been committed, *Leonard*, 75 Ohio St.3d at 518, 664 N.E.2d 527, and the officers and detectives began assembling the information "in connection with a probable or pending criminal proceeding," *Steckman*, 70 Ohio St.3d at 435, 639 N.E.2d 83. Therefore, the city properly relied

on the specific-investigatory-work-product exemption under R.C. 149.43(A)(2)(c) as its reason for not disclosing the supplement narratives.

**{¶ 102}** The majority reaches a contrary decision because it focuses on matters that are unrelated to the content of the supplement narratives. As a result, the majority needlessly redefines what constitutes a "specific investigatory work product" for purposes of what qualifies as an exemption under R.C. 149.43(A)(2)(c).

### The majority needlessly redefines the *Steckman* definition of "specific investigatory work product"

**{¶ 103}** This court has been applying the *Steckman* definition of "specific investigatory work product" to cases involving public-records requests since 1994. Law-enforcement agencies across Ohio have also relied on the *Steckman* definition to determine whether a records request falls within the exemption. Records custodians know that routine offense and incident reports are subject to immediate release upon request. But, according to *Steckman*, other records regarding a criminal investigation are not. The question that the records custodian must answer is: Does the content of the information in the record that is being requested pertain to a probable or pending criminal proceeding?

**{¶ 104}** But today, on a nonexistent foundation, the majority redefines the R.C. 149.43(A)(2)(c) exemption. Now, there are additional metrics—i.e., *when* a police officer or detective creates a record and *how* a police department maintains its records—that must be considered in determining whether a particular record falls squarely within the specific-investigatory-work-product exemption. These additional considerations will only foster confusion and spur litigation. The definition set forth in *Steckman*, 70 Ohio St.3d at 435, 639 N.E.2d 83, is readily understandable and needs no modernization to apply it to this case. "[I]nformation assembled by law enforcement officials in connection with a probable or pending criminal proceeding is, by the work product exception found in R.C. 149.43,

excepted from required release." *Steckman* at 435. We should not fix what is not broken.

{¶ 105} The majority, however, states:

> [W]hen a police department maintains both incident-report forms and investigatory work product as part of the same overall investigatory record, officers' reports that contain their observations at the time that they are responding to an incident, along with the initial witness statements taken at the time of the incident or immediately thereafter, are incident-report information that is a public record and may not be withheld from disclosure as "specific investigatory work product" under R.C. 149.43(A)(2)(c).

Majority opinion at ¶ 45.

{¶ 106} The majority creates an additional temporal part to the definition of "specific investigatory work product." While *Steckman*, 70 Ohio St.3d 420, 639 N.E.2d 83, incorporated a temporal consideration—i.e., specific investigatory work product is created once it is evident that a crime has occurred—the majority now creates an additional temporal element—i.e., specific investigatory work product is created when the police officer or detective generates the record sometime after his or her initial investigation. After today, the definition of specific investigatory work product will turn on (1) at what point it is evident that a crime has occurred and (2) when in time law enforcement assembles the material and generates the record. So, what is that timing? How long after an initial report is created must law-enforcement officers wait before assembling information that will be protected under the specific-investigatory-work-product exemption? Obviously, here, a few minutes is not enough. So, is it hours, days, or weeks? The majority never tells us. Regardless of when it is, the majority's new temporal element is not realistic in

modern-day policing. When law-enforcement officers respond to the scene of a crime, time is of the essence; and gathering evidence—whether physical or testimonial—to support a potential prosecution must begin immediately. Once it is evident that a crime has occurred, the compilation of investigative materials begins in anticipation of litigation, and the related records are exempt under R.C. 149.43(A)(2)(c). And this is exactly what the city was doing in every investigatory case at issue here.

{¶ 107} The majority also includes a consideration about how a public office maintains its records. But that is irrelevant. The Public Records Act—and the exemptions to it—are about the content of the information in the record. Public-records custodians routinely redact information that is exempt from disclosure. R.C. 149.43(B)(1). So, if a law-enforcement agency maintains routine factual information and specific investigatory work product in the same overall record, then the records custodian may disclose the incident-report form while redacting any information that is considered to be specific investigatory work product. *See* R.C. 149.43(A)(2)(c).

{¶ 108} Police officers completed the incident-report forms with the understanding that under *Steckman*, those reports were immediately subject to release. Police officers and detectives then used the supplement narratives to begin assembling the information that would be needed for future prosecutions. Regardless of when that information was collected—at the same time that the incident had been reported or hours, days, or weeks later— that information is properly exempt from disclosure under the specific-investigatory-work-product exemption of R.C. 149.43(A)(2)(c) if the material is collected in anticipation of litigation.

**Statutory damages**

{¶ 109} Before addressing Myers's specific requests for statutory damages, I address two determinations in the majority opinion with which I disagree. First,

the majority opinion states that R.C. 149.43(B)(3) ("If a request is ultimately denied, in part or in whole, the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied") does not contain a requirement that a denial of a public-records request be prompt. And second, the majority opinion states that a denial of one public-records request serves as a blanket denial for all public-records requests. Majority opinion at ¶ 72.

{¶ 110} "The primary duty of a public office when it has received a public-records request is to *promptly* provide any responsive records within a reasonable amount of time and when a records request is denied, to inform the requester of that denial and provide the reasons for that denial." (Emphasis added.) *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11, citing R.C. 149.43(B)(1) and (3). A statutory requirement that need never be completed is not a requirement at all. *See Ware v. Kurt*, __ Ohio St.3d __, 2022-Ohio-1627, __ N.E.3d __, ¶ 70 (Kennedy, J., concurring in part and dissenting in part).

{¶ 111} Moreover, the Public Records Act requires a records custodian to "provide the requester with an explanation, including legal authority, setting forth why the request was denied." R.C. 149.43(B)(3). Therefore, the legislature requires that when a records custodian denies a public-records request, she provide the requester with the legal authority for why the request is being denied. The city understood its obligation to respond to *each* public-records request because it responded to each of Myers's public-records requests.

{¶ 112} Turning to Myers's request for statutory damages, there are two types of records at issue here: incident-report forms and supplement narratives.

*Incident-report forms*

{¶ 113} Myers argues that he is entitled to statutory damages because the city failed to timely provide incident-report forms for request Nos. 1 through 6. I

agree with the majority that Myers is entitled to an award of $1,800 in statutory damages for those requests. Myers requested the public records by email and the factors set forth in R.C. 149.43(C)(2)(a) and (b) allowing for a reduction of such an award are not met here. I also agree with the majority that request Nos. 7, 8, and 9 are not at issue because they were produced for Myers within a reasonable time.

*Supplement narratives*

{¶ 114} Myers makes three arguments for statutory damages that pertain to the supplement narratives. First, he argues that if this court grants him a writ of mandamus for the supplement narratives for request Nos. 1, 2, 3, 5, and 9, then this court should grant him an award of statutory damages for each of those requests because those supplement narratives were—and continue to be—wrongfully withheld. He asks for $1,000 in statutory damages for each of those five requests. Second, he argues that he is entitled to an award of statutory damages for request Nos. 1 through 9 because the city failed to promptly cite any legal authority in support of its denial of Myers's requests for those supplement narratives. Lastly, he argues that he is entitled to statutory damages because the city delayed disclosing the supplement narratives from the completed investigations in request Nos. 4, 6, 7, and 8.

*Supplement narratives: Request Nos. 1, 2, 3, 5, and 9*

{¶ 115} For reasons that differ from the majority, I agree that Myers is not entitled to statutory damages for the city's denial of the supplement narratives in request Nos. 1, 2, 3, 5, and 9. As set forth above, I would deny his request for a writ of mandamus because these supplement-narrative requests are exempt under the specific-investigatory-work-product exemption under R.C 149.43(A)(2)(c). The majority determines that Myers should not receive an award of statutory damages pertaining to these supplement-narrative requests because any amount of possible damages should be abated under R.C. 149.43(C)(2)(a) and (b).

38

{¶ 116} Myers argues that even if this court does not grant him a writ of mandamus for request Nos. 1, 2, 3, 5, and 9, he would still be entitled to statutory damages because the city failed to promptly cite legal authority in support of its denial for Myers's requests for supplement narratives in contravention of R.C. 149.43(B)(3). The majority states that R.C. 149.43(B)(3) does not contain a requirement that the denial be "prompt." As set forth above, I disagree. The majority also suggests that when a records custodian provides a denial with legal reasoning as to one public-records request, that denial is sufficient for any subsequent denials of public-records requests. Again, as set forth above, I disagree.

{¶ 117} Additionally, I would not award Myers statutory damages for request Nos. 1, 2, 3, 5 and 9, because the city *did* provide a prompt explanation with legal authority. Almost every response to Myers's requests was a variation on the same theme—that the city was not required to release the supplement narratives while an investigation was ongoing. For instance, in response to request No. 3, Kinzer responded, "Please see the response from Det. Wallace, who is the investigating detective on this case (P2015431). I have already provided the initial to everyone. Once he completes his investigation, I am more than happy to send out the full report." Included with Kinzer's response was a forwarded email from the detective that read: "[The case] is still pending and he can only have initial." As to Myers's argument that this response was insufficient because it failed to provide a specific legal response, R.C. 149.43(B)(3) does not require the records custodian to cite to a specific statutory section or case. Using lay terms to explain the legal authority for denying a public-records request is sufficient.

*Supplement narratives: Request Nos. 4, 6, 7, and 8*

{¶ 118} Lastly, Myers argues that although the public-record incident reports in investigation Nos. P2015437, P2015606, P2100231, and P2100318 had been disclosed once those investigations were closed, the city unreasonably delayed

its disclosure of those supplement narratives. I agree with the majority that the evidence does not support this argument.

{¶ 119} Myers also argues that he is entitled to statutory damages because the city failed to promptly cite legal authority in support of its denial of Myers's request for supplement narratives for these requests. As stated above, the city provided responses with legal reasoning for every records request. Most responses were like the one that Kinzer had provided for request No. 7: "[I]t's still an open investigation."

{¶ 120} The response to request No. 6, however, was different. Kinzer responded: "This is all I am able to release on the case from Det. Fyffe at this time— P2015606." Below that response was the following information: "*Detective was notified via ICAC of possible pornography involving a juvenile. Suspect in case has not been identified at this time, still awaiting information on case*." (Italics sic.) This response indicates that investigation No. P2015606 was still ongoing.

{¶ 121} While Kinzer's response did not directly state that investigation No. P2015606 was still an active case, the detective's response did. The detective wrote that the case involved allegations of pornography involving a juvenile and that the suspect had not been identified. Plainly, it was still an open investigation because a suspect had not been identified and caught.

{¶ 122} Therefore, just as Myers is not entitled to statutory damages for the city's denial of the supplement narratives in request Nos. 1, 3, 5, and 9, Myers is not entitled to statutory damages for the city's denial of the supplement narratives in request Nos. 4, 6, 7, and 8.

*Court costs and attorney fees*

{¶ 123} I dissent from the majority's judgment awarding Myers court costs. Court costs are awarded after a court orders a records custodian to comply with R.C. 149.43(B). R.C. 149.43(C)(3)(a)(i). Because I would not grant Myers a writ of mandamus, I would not award him court costs.

{¶ 124} Likewise, a court may order the payment of attorney fees when it orders a public office to comply with R.C. 149.43(B). R.C. 149.43(C)(3)(b). Again, because I would not grant Myers a writ of mandamus, I would not award attorney fees.

## Conclusion

{¶ 125} I agree with the majority's judgment awarding Myers $1,800 in statutory damages because the city failed to timely produce incident-report forms. I also agree with the majority's judgment denying Myers an award of statutory damages for his public-records requests for the supplement narratives. However, I disagree with the majority's reasoning.

{¶ 126} I dissent from the majority's judgment granting Myers a partial writ of mandamus. Specific investigatory work product is "information assembled by law enforcement officials in connection with a probable or pending criminal proceeding," *Steckman*, 70 Ohio St.3d 420, 639 N.E.2d 83, at paragraph five of the syllabus, and that information is exempt from disclosure pursuant to R.C. 149.43(A)(2)(c). Because the supplement narratives fall squarely within the *Steckman* definition of specific investigatory work product, the records are not subject to disclosure and the writ of mandamus should be denied. Because the majority decides otherwise, I concur in part and dissent in part.

DeWine, J., concurs in the foregoing opinion.

———————————

Robinson Law Firm, L.L.C., and Emmett E. Robinson, for relator.

Reminger Co., L.P.A., Patrick Kasson, and Kent Hushion, for respondents.

———————————